PUBLIC AFFAIRS ASSOCIATES, INC., TRADING AS
PUBLIC AFFAIRS PRESS, v. RICKOVER.

No. 36. Argued November 6–7, 1961.—Decided March 5, 1962.*

*Harry N. Rosenfield* argued the cause for Public Affairs
Associates, Inc. With him on the briefs was *Stanley B.
Frosh.*

*Joseph A. McDonald* argued the cause for Vice Admiral
Rickover. With him on the briefs were *Edwin S. Nail*
and *Harry Buchman.*

PER CURIAM.

These two cases arose under the Declaratory Judgment
Act of June 14, 1934, 48 Stat. 955, as amended, now
28 U. S. C. (1958 ed.) §§ 2201 and 2202. The plaintiff,
an educational publishing corporation, asked defendant,
Vice Admiral Rickover, for leave to publish, to an unde-
fined extent, uncopyrighted speeches he had theretofore
delivered. He refused on the ground that what he
claimed to be exclusive publishing rights had been sold

---

*Together with No. 55, *Rickover v. Public Affairs Associates, Inc.,
Trading as Public Affairs Press,* also on certiorari to the same Court.

to another publisher, and he gave notice of copyright on speeches subsequent to the plaintiff's demand. Since the defendant threatened restraint of plaintiff's use of his speeches, the plaintiff sought this declaratory relief. The District Court dismissed the complaint on the merits, 177 F. Supp. 601. The Court of Appeals (one judge dissenting), agreeing with the District Court that the defendant had, as to his uncopyrighted speeches, the common-law rights of an author, held that he had forfeited his rights by reason of their "publication"; as to his copyrighted speeches, that court remanded the case to the District Court for determination of the extent to which "fair use" was open to the plaintiff. 109 U. S. App. D. C. 128, 284 F. 2d 262. By petition for certiorari and cross-petition both parties sought review and because serious public questions were in issue we brought the cases here. 365 U. S. 841.

The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so. *Brillhart* v. *Excess Ins. Co.*, 316 U. S. 491, 494, 499; *Great Lakes Co.* v. *Huffman*, 319 U. S. 293, 299–300; *Federation of Labor* v. *McAdory*, 325 U. S. 450, 462; *Mechling Barge Lines* v. *United States*, 368 U. S. 324, 331. Of course a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles* v. *Peoples Bank,* 333 U. S. 426, 431. We have cautioned against declaratory judgments on issues of public moment, even falling short of constitutionality, in speculative situations. *Eccles* v. *Peoples Bank, supra,* at 432.

In these cases we are asked to determine matters of serious public concern. They relate to claims to intel-

lectual property arising out of public employment. They thus raise questions touching the responsibilities and immunities of those engaged in the public service, particularly high officers, and the rightful demands of the Government and the public upon those serving it. These are delicate problems; their solution is bound to have far-reaching import. Adjudication of such problems, certainly by way of resort to a discretionary declaratory judgment, should rest on an adequate and full-bodied record. The record before us is woefully lacking in these requirements.

The decisions of the courts below rested on an Agreed Statement of Facts which sketchily summarized the circumstances of the preparation and of the delivery of the speeches in controversy in relation to the Vice Admiral's official duties. The nature and scope of his duties were not clearly defined and less than an adequate exposition of the use by him of government facilities and government personnel in the preparation of these speeches was given. Administrative practice, insofar as it may relevantly shed light, was not explored. The Agreed Statement of Facts was in part phrased, modified and interpreted in the course of a running exchange between trial judge and counsel. The extent of the agreement of counsel to the Agreed Statement of Facts was in part explained in the course of oral argument in the District Court. None of the undetailed and loose, if not ambiguous, statements in the Agreed Statement of Facts was subject to the safeguards of critical probing through examination and cross-examination. This is all the more disturbing where vital public interests are implicated in a requested declaration and the Government asserted no claim (indeed obliquely may be deemed not to have disapproved of the defendant's claim) although the Government was invited to appear in the litigation as *amicus curiae* and chose not

to do so. So fragile a record is an unsatisfactory basis on which to entertain this action for declaratory relief.

Accordingly, the judgment of the Court of Appeals is vacated, with direction to return the case to the District Court for disposition not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE DOUGLAS, concurring.

It is conceded that the Declaratory Judgment Act is an authorization, not a command—a conclusion as well settled as is the proposition that the jurisdiction of federal courts is confined to "cases" or "controversies." *Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227. The requirements of a "case" or "controversy" and the propriety of the use of the declaratory judgment are at times closely enmeshed. In resolving those issues the Court has on the whole been niggardly in the exercise of its authority. Thus, in *Doremus* v. *Board of Education,* 342 U. S. 429, a taxpayer's suit to declare that a public school system could not be used for religious instruction was dismissed because there was not "the requisite financial interest." *Id.,* at 435. *Frothingham* v. *Mellon,* 262 U. S. 447—a decision with which I have great difficulty—was given new dimensions. That case held that a taxpayer of the United States had no standing to challenge a federal appropriation, since the question was essentially a matter of public, not private, concern.[1]

---

[1] "Back in 1923, the Court went further and held that the mere fact that a person could show he paid federal taxes made no difference in this respect and gave him no standing to challenge an act of Congress appropriating public funds. The Court recognized that an unconstitutional spending of public money might conceivably necessitate a rise in subsequent tax levies. Nevertheless it held that the causal connection between any specific expenditure and future tax rates would be too remote and uncertain to constitute an immediate

*Id.*, at 487. This ruling was projected into the state field by the *Doremus* case, barring relief to those legitimately concerned with the operation of the public school system.

At times the question of the "ripeness" of an issue for judicial review is brigaded with the appropriateness of declaratory relief. In *Public Service Comm'n* v. *Wycoff Co.*, 344 U. S. 237, 244, relief was denied though a carrier's certificate to do an interstate business was placed in jeopardy by threatened state action. That principle was extended in *Eccles* v. *Peoples Bank,* 333 U. S. 426, to deny relief in a situation comparable to a suit to remove a cloud from one's title. For a bank was being saddled with conditions by the Federal Reserve System that crippled its activities and restricted the market for its stock. On other occasions, "mootness" has been used as the rubric to deny relief through the route of a declaratory judgment, even though the litigant was still insecure and in peril as a result of administrative action. *Mechling Barge Lines* v. *United States,* 368 U. S. 324.

At other times the issue is said to be "abstract" because of the lack of immediacy in the threatened enforcement of a law. Thus, a person must risk going to jail or losing his job to get relief. That was true in *Poe* v. *Ullman,* 367 U. S. 497, a case involving Connecticut's birth-con-

personal injury to a taxpayer. Hence he would have no more to complain about than others.

"Rulings of this kind, designed to keep peace among the departments of government, are eminently sensible as over-all policies. Yet they also provide a way to immunize a bad law from attack in the courts: one need only frame the law in such a way as to violate the basic rights of nobody in particular but everybody in general, that is, of the *entire* American people. Then, since no one can point to an injury that is distinguishable from his neighbors', no one can come into court and challenge the legislation!" Edmond Cahn, How to Destroy the Churches, Harper's Magazine, Nov. 1961, p. 36.

trol law, and in *United Public Workers* v. *Mitchell,* 330 U. S. 75, involving Civil Service Rules restricting the political rights of federal employees.

The list is not complete. But these cases illustrate the restrictive nature of the judge-made rules which have made the federal courts so inhospitable to litigation to vindicate private rights. At no time has the Court been wholly consistent; nor have I. Compare *Connecticut Ins. Co.* v. *Moore,* 333 U. S. 541, 556 (dissenting opinion), with *Western Union Co.* v. *Pennsylvania,* 368 U. S. 71. But my maturing view is that courts do law and justice a disservice when they close their doors to people who, though not in jail nor yet penalized, live under a regime of peril and insecurity. What are courts for, if not for removing clouds on title, as well as adjudicating the rights of those against whom the law is aimed, though not immediately applied?

*Evers* v. *Dwyer,* 358 U. S. 202, is illustrative of what I deem to be the important role served by the declaratory judgment. A Negro who had not been arrested for riding a segregated bus brought a class action to have his rights and those of his class adjudicated. We held there was an "actual controversy," because it was clear that the local authorities were bent on enforcing the segregation law, though they had not enforced it against this plaintiff.[2]

---

[2] And see *Mitchell* v. *United States,* 313 U. S. 80, where we held that a Negro who filed a complaint with the Interstate Commerce Commission against an interstate carrier for discriminating against him had standing to complain, though it did not appear that he intended to make a similar railroad journey:

"He is an American citizen free to travel, and he is entitled to go by this particular route whenever he chooses to take it and in that event to have facilities for his journey without any discrimination against him which the Interstate Commerce Act forbids." *Id.,* at 93.

The opinion of the Court in this case seems to set declaratory relief apart as suspect; it leaves the *innuendo* that if the case were here under a different complaint, the result might be different.  I share none of these disparaging thoughts.  I agree, however, that no matter what the cause of action might be, the present record leaves gaps which make an adjudication impossible.  The lack of evidence as to the extent to which Rickover's literary works were products of his office is fatal for me, though, of course, it would not be to one who considers those facts irrelevant to the legal issue.  The approach we take today has often been used to abdicate the judicial function under resounding utterances concerning the importance of judicial self-denial.  See, *e. g., United States* v. *Auto. Workers,* 352 U. S. 567, 590–592.  It has also served to place undue emphasis upon the clarity and precision of the questions presented, as in *Rescue Army* v. *Municipal Court,* 331 U. S. 549, where the Court subjected the appellant "to the burden of undergoing a third trial" in order that the issues might be in a more "clean-cut and concrete form."  *Id.,* at 584.  But on the present record I have no other choice, for without additional facts I must withhold decision.

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE WHITTAKER concurs, dissenting.

With respect to those of Admiral Rickover's speeches written and delivered prior to December 1, 1958, I would affirm.  The record made below and filed here is, I believe, adequate to support the judgment of the Court of Appeals that the Admiral's practice of distributing numerous copies of his speeches, without limitations as to the persons who would receive them or the purposes to which they would be put by the recipients, and without

so much as a suggestion of a copyright claim, amounted to a dedication of those works to the public domain. At the same time, I recognize the inadequacy of the present record for determining now whether speeches on which a copyright notice had been placed were effectively protected by that notice from other than "fair use," and whether Public Affairs intended to make only "fair use" of those works. I would, therefore, also affirm the remand to the District Court ordered by the Court of Appeals as to such speeches.

In the light of these views, I find it unnecessary to pass now on the questions raised in No. 36, and would dismiss that case as premature.

Mr. Justice Harlan, dissenting.

The basic issue which brought these cases here was whether Admiral Rickover's speeches were copyrightable in light of the following provision of the Copyright Act: "No copyright shall subsist in . . . any publication of the United States Government." (17 U. S. C. § 8.) As I see it, decision of that issue turns not merely on whether such speeches were made by the Admiral in the "line of duty," but also, and in my view more fundamentally, on whether such speeches were in any event "publication[s] of the United States Government." In my opinion the record is sufficient to require adjudication on both aspects of that issue, and on this phase of the controversy I agree with the result reached by the Court of Appeals. I also agree with its determination as to the adequacy of the copyright notice affixed to speeches delivered after December 1, 1958.

However, I consider the record inadequate to justify adjudication as to whether Admiral Rickover's right to copyright was lost with respect to speeches delivered

before December 1, 1958, by reason of their alleged entry into "the public domain."* As to that issue I would vacate the judgment of the Court of Appeals and remand the case to the District Court for further proceedings. In all other respects I would affirm the judgment below.

---

*The stipulation states that with respect to 20 of the 22 speeches made before December 1, 1958, "Admiral Rickover mailed *some* to individuals who had requested copies or who Admiral Rickover believed would be interested in the subject. *Some* were sent by Admiral Rickover . . . to the sponsor of the speech to be made available to the press *and others* at the place where the speech was to be delivered." (Emphasis added.) It appears from the stipulation that no further distribution other than for press use was ever made. Whether the foregoing publications were general enough to amount to a dedication to the public of all or any of these speeches depends on more precise information than is afforded by the stipulation.