The **BOARD OF ELECTIONS OF** the **CITY OF NEW YORK et al.,** Plaintiffs,

v.

**John P. LOMENZO, Secretary of State of the State of New York, Defendant.**

No. 72 Civ. 3777.

United States District Court, S. D. New York.

Aug. 8, 1973.

Norman Redlich, Corp. Counsel, New York City, for plaintiffs Bd. of Elections and named members; Margaret G. Gold, New York City, of counsel.

New York Civil Liberties Union, New York City, for plaintiffs First Vote, Youth Citizenship Fund, Alan Epstein and Richard Johnson; Burt Neuborne, Arthur Eisenberg, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendant; Robert S. Hammer, Asst. Atty. Gen., of counsel.

Before MULLIGAN, Circuit Judge, and TENNEY and POLLACK, District Judges.

## OPINION

TENNEY, District Judge.

In the within action plaintiffs, basing jurisdiction upon 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 et seq. allege that N. Y. Election Law § 355 (McKinney's Consol.Laws, c. 17, Supp.1972),[1] which prohibits plaintiffs from conducting volunteer voter registration on Sundays: (a) effects an unconstitutional establishment of religion in violation of the first amendment; (b) prohibits the free exercise of religion in violation of the first amendment; (c) unlawfully discriminates against Sabbatarians in violation of the first and fourteenth amendments; and (d) constitutes an unlawful impediment to the franchise in violation of the first, fourteenth, fifteenth and twenty-sixth amendments. Plaintiffs are various organizations devoted to increasing participation in the electoral process, individuals wishing to conduct volunteer voter registration on Sundays, and the New York City Board of Elections and the commissioners thereof.

Plaintiffs moved pursuant to 28 U.S. C. §§ 2281 and 2284 for an order con-

---

1. N.Y. Election L. § 355 provides, in pertinent part:

"Any qualified person may register at the main office of the board of elections or any branch office thereof at any time during the hours that such office is regularly open for business, or at any other time which the board of elections in its discretion may permit, on any day which is not a Sunday, holiday or day of election . . . .."

vening a three-judge court to hear and determine their application for declaratory and injunctive relief. By order dated May 22, 1973, a three-judge court was duly convened. On June 28, 1973, the court heard oral argument on plaintiffs' request for relief and on defendant's motion to dismiss the complaint for lack of jurisdiction. Although we conclude that federal jurisdiction is present, we remand to the single district judge to dismiss for lack of a justiciable controversy.

■ The threshold question facing the court is whether we have subject matter jurisdiction over the action. At the oral argument, counsel for plaintiffs withdrew their demand for injunctive relief as set forth in the amended complaint and stated that declaratory relief in this case would be a sufficient remedy. The withdrawal of the demand for injunctive relief stems from the rather unusual posture of the action: to wit, those immediately responsible for enforcing the challenged statute, i. e., the New York City Board of Elections and its commissioners, who ordinarily would be defendants, are co-plaintiffs in this action along with the organizations and individuals wishing to conduct volunteer voter registration on Sundays. By abandoning their prayer for injunctive relief, plaintiffs have rendered this case an improper one for resolution by a three-judge panel. *See* Mitchell v. Donovan, 398 U.S. 427, 430–431, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 153–154, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); Seergy v. Kings County Republican County Committee, 459 F.2d 308, 312 (2d Cir. 1972); Rosario v. Rockefeller, 458 F.2d 649, 651–652, note 2 (2d Cir. 1972), aff'd, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (Mar. 21, 1973).

■ Under these circumstances, we normally would remand to the single district judge for consideration of the merits. Since, however, we all are agreed that this case is an appropriate one for application of the doctrine of judicial restraint, Rescue Army v. Municipal Court, 331 U.S. 549, 568–575, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947), in the interests of judicial economy we will set forth our reasons for dismissal then remand to the single district judge for entry of an appropriate order of dismissal. Perez v. Ledesma, 401 U.S. 82, 87, 91 S. Ct. 674, 27 L.Ed.2d 701 (1971).

The prime requisite for the maintenance of a declaratory judgment action is the existence of an actual controversy,[2] particularly when the constitutionality of a legislative act is challenged.

"No federal court, whether this Court or a district court, has 'jurisdiction to pronounce any statute, either of a State or of the United States, void, because irreconcilable with the constitution, *except as it is called upon to adjudge the legal rights of litigants in actual controversies.*' Liverpool, N. Y. & P. S. S. Co. v. Commissioners, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885) . . . . The express limitation of the Declaratory Judgment Act to cases 'of actual controversy' is explicit recognition of this principle." Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969).

Our first inquiry, therefore, must be

"whether the facts alleged, under all the circumstances, show that there is a substantial controversy, *between parties having adverse legal interests,* of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v.

2. 28 U.S.C. § 2201 provides:

"*In a case of actual controversy within its jurisdiction,* except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." (Emphasis added.)

Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941) (emphasis added).

Applying this standard to the instant action, the first difficulty with which we are confronted is the choice of the Secretary of State as the sole party defendant. Under the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a state officer may be named as a defendant only so long as such officer has "some connection with the *enforcement* of the act" in question. *Id.* at 157, 28 S.Ct. at 453 (emphasis added). It appears that the Secretary of State has no connection with the enforcement of the election laws with regard to voter registration or otherwise. His duties are ministerial only.[3] At first blush, therefore, it would seem that since the Secretary of State has nothing to do with the enforcement of § 355, he would have no interest in controverting the allegations of the complaint. Thus the case or controversy requirement of Article III, § 2 of the Constitution would not be satisfied and the court would be deprived of jurisdiction. Indeed, there is support for the bare proposition that lack of a proper defendant deprives a federal court of jurisdiction. *See* Kerrigan v. Boucher, 450 F.2d 487, 488 (2d Cir. 1971).[4]

■ At the oral argument counsel for plaintiffs urged that if we held the Secretary of State an improper defendant, plaintiffs should be allowed the opportunity to substitute a proper defendant. Their argument is based on the fact that here a proper defendant most likely would be the Attorney General or Governor, *see* Socialist Workers Party v. Rockefeller, 314 F.Supp. 984, 988, note 7 (S.D.N.Y.) (three-judge court), aff'd, 400 U.S. 806, 91 S.Ct. 65, 27 L.Ed.2d 38 (1970), and the Attorney General already is involved in the case as counsel for the present defendant. Therefore,

the question boils down to whether federal jurisdiction can be conferred by an amendment to the complaint substituting a proper defendant for an improper one. The answer, at least in this circuit, is in the affirmative. Hackner v. Guaranty Trust Co., 117 F.2d 95, 98 (2d Cir.), cert. denied, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520 (1941); *see also* National Maritime Union of America v. Curran, 87 F.Supp. 423, 425–427 (S.D. N.Y.1949).

*Hackner* was a diversity case wherein the claims of none of the original plaintiffs satisfied the amount in controversy required by 28 U.S.C. § 1332. Plaintiffs moved to amend the complaint to substitute a plaintiff who satisfied the jurisdictional minimum. The court allowed the amendment on the grounds (1) that the choice was between requiring the new plaintiff to institute a new action or simply allowing the action to be continued by amendment, and (2) that due process had been satisfied because the defendant had been reasonably apprised of the action. The court commented:

"Defendants' claim that one cannot amend a nonexistent action is purely formal, in the light of the wide and flexible content given to the concept of action under the new rules. Actually she has a claim for relief, an action in that sense; as the Supreme Court has pointed out, there is no particular magic in the way it is instituted." 117 F.2d at 98 (citations omitted).

Applying the *Hackner* holding to the instant case, the fact that we are here concerned with substitution of a defendant, rather than a plaintiff, is not a ground for distinguishing this case from *Hackner* as long as no violation of due process has occurred. Due process has not been violated here because a proper defendant would be represented by the Attorney General, who already is in-

---

3. *E. g.*, collecting data from the local boards of election. N.Y. Election L. § 370(4) (McKinney 1964).

4. On closer analysis, however, it is clear that *Kerrigan* is really a mootness case.

Plaintiff challenged the constitutionality of a state "landlord's lien" statute. Although the named defendants had once been proper parties, the case was rendered moot by the landlords' returning plaintiff's property and plaintiff's moving to new lodgings.

volved in the case as attorney for the Secretary of State.

Accordingly, dismissal for want of jurisdiction due to lack of a case or controversy based on the ground that plaintiffs have named the wrong defendant would be improper and, under other circumstances, we would allow plaintiffs the opportunity to amend their complaint to substitute a proper defendant. However, even if an action for a declaratory judgment satisfies the jurisdictional requirements, the district court may, in its discretion, decline to afford such relief where it concludes that the case is nonjusticiable.

Justiciability was discussed by Mr. Chief Justice Warren in Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968):

"Justiciability is itself a concept of uncertain meaning and scope. Its reach is illustrated by the various grounds upon which questions sought to be adjudicated in federal courts have been held not to be justiciable. Thus, no justiciable controversy is presented when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action. Yet it remains true that '[j]usticiability is . . . not a legal concept with a fixed content or susceptible of scientific verification. Its utilization is the resultant of many subtle pressures. . . .' Poe v. Ullman, 367 U.S. 497, 508, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989 (1961)." (Footnotes omitted.)

The relationship between justiciability and declaratory relief has best been described by Mr. Justice Jackson:

"But when all of the axioms have been exhausted and all words of definition have been spent, the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power. While the courts should not be reluctant or niggardly in granting this relief in the cases for which it was designed, they must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especially in the field of public law. A maximum of caution is necessary . . . where a ruling is sought that would reach far beyond the particular case. Such differences of opinion or conflicts of interest must be 'ripe for determination' as controversies over legal rights. The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." Public Service Commission v. Wycoff Co., 344 U.S. 237, 243–244, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952).

In the case at bar we are confronted with problems of standing, mootness and ripeness which in the aggregate we conclude render the case nonjusticiable.

■ With regard to standing, we must inquire whether the plaintiffs have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions?" Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

It is clear, and counsel for plaintiffs did not press the claim at oral argument, that the plaintiffs named in the complaint lack standing to raise the free exercise and equal protection issues since none of them are Sabbatarians and thus they have not alleged any infringement of their own religious freedom. McGowan v. Maryland, 366 U.S. 420, 429, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). Even though a party might suffer substantial injury from the application of a statute, he cannot challenge its constitutionality unless he can show he is within the class whose constitutional rights are

allegedly infringed. United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); Bode v. Barrett, 344 U.S. 583, 585, 73 S.Ct. 468, 97 L.Ed. 567 (1953). Leaving aside for the moment any consideration of the commissioners as plaintiffs, the volunteer deputy registrars and organizations engaging in registration activity would appear to have standing to raise the establishment clause and unlawful impediment to the franchise claims since, being actively engaged in registration activity, they have more than the mere "interest" in these issues found insufficient to confer standing in Sierra Club v. Morton, 405 U.S. 727, 739–740, 92 S.Ct. 1361, 31 L. Ed.2d 636 (1972). Bishop v. Lomenzo, 350 F.Supp. 576, 581 (E.D.N.Y.1972) (three-judge court). Although there is some authority for the proposition that the commissioners of the Board of Elections would have standing to challenge the constitutionality of § 355, *see* Board of Education v. Allen, 392 U.S. 236, 241, note 5, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968); City of New York v. Richardson, 473 F.2d 923, 933 (2d Cir. 1973); Aguayo v. Richardson, 473 F.2d 1090, 1100 (2d Cir. 1973), we do not pass upon this issue because we conclude that considerations of mootness and ripeness intrude upon the standing of these plaintiffs. The case is moot as to the commissioners named in the complaint, for, even if they originally had standing to raise the issues, the Board currently is *undergoing reorganization* and expansion from four to ten members and it is our understanding that the present commissioners do not intend to run for re-election. *Cf.* Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 588, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); Sanders v. Wyman, 464 F.2d 488, 491 (2d Cir. 1972), cert. denied, 409 U.S. 1128, 93 S.Ct. 950, 35 L.Ed.2d 261 (1973). The case is not ripe for adjudication with regard to the incoming commissioners because the court knows neither who they will be nor whether they would wish to align themselves on the plaintiff or defendant side of this lawsuit.

Accordingly, given the latitude bestowed on us under 28 U.S.C. § 2201, we decline to entertain the within action for a declaratory judgment for lack of a justiciable controversy. Golden v. Zwickler, supra, 394 U.S. 103, 89 S.Ct. 956, 22 L. Ed.2d 113; Public Affairs Associates, Inc. v. Rickover, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). Therefore, we remand to the single district judge for dismissal.

So ordered.

MULLIGAN, Circuit Judge (concurring):

As the majority opinion points out, this alleged case not only lacks justiciability but is not at all appropriate for a three-judge court. Counsel seeks no injunctive relief because the City Board of Elections, which is charged with enforcing the challenged statute, is a plaintiff instead of a defendant and, in any event, has since been replaced by a different board with different commissioners. There is no adversary status here and there is no real controversy. My only reason for a separate concurrence is that I cannot agree that the volunteer registrars and the registration organizations have any standing to urge even the establishment and infringement of franchise claims. I do not think that Bishop v. Lomenzo, 350 F.Supp. 576 (E.D.N.Y. 1972) which purports to distinguish Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) can survive the holding of Aguayo v. Richardson, 473 F.2d 1090, 1099–1100 (2d Cir. 1973) where Judge Friendly indicated that some members of the interested organization must be at least potentially affected by the offending statute. There is no showing here that the voluntary registrars or the members of the organizations have been in any way affected actually or potentially by the statute. On the contrary, it is reasonable to suppose that all are fully and freely registered to vote.