SENTRY INSURANCE A MUTUAL COMPANY, Plaintiff,

v.

FLOM'S CORPORATION and George Tarnoff, Defendants.

No. 92–CV–75033–DT.

United States District Court, E.D. Michigan, S.D.

Feb. 23, 1993.

188

Peter R. Tolley, Paul L. Nelson, Grand Rapids, MI, for plaintiff.

Nancy L. Kahn, Southfield, MI, for defendants.

### OPINION

DUGGAN, District Judge.

Currently before the Court are (1) plaintiff Sentry Insurance A Mutual Company's (hereinafter "Sentry") motion for judgment on the pleadings or, in the alternative, for summary judgment, and (2) defendants Flom's Corporation's (hereinafter Flom's) and George Tarnoff's motions for partial summary disposition. For reasons which follow, this Court shall grant Sentry's motion for judgment on the pleadings and deny Flom's and Tarnoff's motions for partial summary disposition.

### Facts

The following facts are taken from plaintiff's complaint for declaratory judgment and from plaintiff's amended complaint for declaratory judgment. Plaintiff Sentry is a corporation organized and existing under the laws of the State of Wisconsin with its principal place of business in the City of Stevens Point, Wisconsin. Sentry is the successor corporation of Sentry Insurance of Michigan, Inc., formerly a Michigan corporation which was terminated as of December, 1988.

Defendant Flom's is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in the City of Detroit. Defendant Tarnoff is a citizen of the State of Michigan, currently residing in the City of Morgantown, West Virginia. Tarnoff is the President of Flom's.

In 1986, Sentry Insurance of Michigan, Inc., a wholly-owned subsidiary of Sentry, issued policy no. 88–92237–01 to Flom's Corporation, providing liability and umbrella insurance coverage to Flom's. At all relevant times, Flom's was engaged in the business of selling dry cleaning and laundry supplies to dry cleaning and laundry establishments and laundromats located throughout the State of Michigan.

According to plaintiff, beginning as early as 1979 and continuing at least until October, 1989, Flom's, through George Tarnoff, met with at least one competitor for the purpose of setting the prices to be charged for the products sold by Flom's. Tarnoff discussed and agreed upon the prices for those products and the effective dates of price changes for those products and did, in fact, charge those agreed-upon prices to its customers. (See Second Amended Complaint, ¶ 42, filed in the Dry Cleaning lawsuit, infra).

In 1991, Flom's and Tarnoff were charged in an Information with a criminal violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, based on the above-mentioned conduct. See United States v. Flom's Corporation, No. 91–CR–80974–DT. On September 20, 1991, Flom's and Tarnoff entered into a Rule 11 Plea Agreement pursuant to which they agreed to plead guilty to the information. On November 14, 1991, Flom's and Tarnoff appeared before the Hon. Anna Diggs Taylor in the United States District

Court for the Eastern District of Michigan and pled guilty to the Information.

During the course of their guilty pleas, Flom's and Tarnoff admitted, among other things, that they participated in a conspiracy to fix prices on dry cleaning and laundry supplies, that they discussed and set the effective dates for price changes, and that they charged the fixed prices to their customers.

On November 15, 1991, a civil class action lawsuit was filed in the Eastern District of Michigan against Flom's, Tarnoff and others, seeking treble damages, attorneys fees and costs under federal antitrust laws for the conduct to which Flom's and Tarnoff had pled guilty. *Dry Cleaning & Laundry Institute of Detroit, Inc. v. Flom's Corporation,* No. 91–CV–76072–DT (hereinafter "Dry Cleaning" lawsuit). On April 23, 1992, Flom's and Tarnoff tendered this lawsuit to Sentry and requested that Sentry defend and indemnify them.[1]

A controversy exists between Sentry and the defendants as to whether the policy provides coverage for the claims based on the *Dry Cleaning* lawsuit and whether Sentry has a duty to defend against that lawsuit and/or indemnify Flom's and/or Tarnoff for any damage award rendered against them in that lawsuit.

Sentry requests that this Court declare the rights of the parties under the policy and decide whether Sentry has a duty to defend and/or indemnify Flom's and/or Tarnoff on the claims made in the *Dry Cleaning* lawsuit.

### Declaratory Judgment

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. The Supreme Court has emphasized the discretionary nature of the Act. In *Public Affairs Press v. Rickover,* 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962), the Court stated:

> The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.... Of course a District Court cannot decline to entertain such an action as a matter of whim or personal disinclination. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank,* 333 U.S. 426, 431, 68 S.Ct. 641, 644, 92 L.Ed. 784 (1948).

*Id.,* 369 U.S. at 112, 82 S.Ct. at 582 (citations omitted). In *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), the Court stated that the statute " 'is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Id.* at 72, 106 S.Ct. at 428 (quoting *Public Service Comm'n v. Wycoff Co.,* 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952)).

In *Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 277 (6th Cir.1990), the Sixth Circuit discussed the criteria to be applied in deter-

---

1. On June 8, 1992, a second antitrust lawsuit was filed in the Eastern District of Michigan against Flom's, Tarnoff and others, seeking treble damages, attorneys fees and costs for the conduct which was the subject of the Information, Plea Agreement, and Plea. *Ace–Tex Corporation v. Flom's Corporation,* No. 92–CV–73237–DT (hereinafter "Ace–Tex" lawsuit). On July 1, 1992, Flom's and Tarnoff tendered the *Ace–Tex* lawsuit to Sentry and requested that Sentry defend and indemnify them. On June 17, 1992, Sentry denied both requests by Flom's and Tarnoff for defense and indemnity. On February 3, 1993, this Court entered an Order for Dismissal, dismissing the *Ace–Tex* lawsuit without prejudice. Thus, Sentry has no duty to defend against that complaint.

On August 25, 1992, a third civil lawsuit was filed in the Eastern District of Michigan against Flom's and Tarnoff seeking treble damages, attorneys fees and costs under federal antitrust laws for the conduct to which Flom's and Tarnoff had pled guilty. *Kenneth King, d/b/a 3–Way Cleaners v. Flom's Corporation and George Tarnoff,* No. 92–CV–75150–DT. On September 22, 1992, Flom's and Tarnoff tendered the *King* lawsuit to Sentry and requested that Sentry defend and indemnify them with regard to the *King* lawsuit. On October 6, 1992, Sentry denied the request by Flom's and Tarnoff for defense and indemnity. On December 22, 1992, this Court entered an Order of Dismissal, dismissing the *King* lawsuit. Thus, Sentry likewise has no duty to defend against that complaint.

mining whether a declaratory ruling is appropriate. The Sixth Circuit applies two criteria and considers five factors:

> We apply the following general principles in determining whether a declaratory ruling is appropriate:
>
>> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*Id.* at 277. The five factors considered by the Sixth Circuit include:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*Id.*

In the case at hand, a declaratory judgment would serve a useful purpose in clarifying and settling the issue of whether Sentry has a duty to defend Flom's and Tarnoff in the *Dry Cleaning* lawsuit, and will terminate and afford relief from the controversy giving rise to this proceeding. Thus, the first two factors are met.

As to the third factor, there is no evidence that a declaratory remedy is being used to "provide an arena for a race for res judicata," especially since there is no competing state action pending. Likewise, the use of a declaratory action should not increase friction between federal and state courts; hence, the

fourth criterion is satisfied. Finally, no alternative, more effective remedy has been argued or suggested in this case.

For the above reasons, this Court shall exercise its discretion to declare whether Sentry has a duty to defend Flom's and Tarnoff in the pending lawsuit against Flom's and Tarnoff.

### The Insurance Policy

The defendants argue that Sentry has a duty to defend defendants against the claims brought in the *Dry Cleaning* lawsuit. Defendants base their requests for defense and indemnification on the theory that the underlying antitrust claims, seeking damages for the defendants' price-fixing activities, are claims of "unfair competition" as that term is used in the insurance policies issued by Sentry. (Combined brief in opposition, at 1). Defendants argue that they advertised the "fixed" prices and that therefore the "unfair competition" arose out of defendants' advertising activities. Accordingly, defendants contend, coverage exists. For reasons which follow, this Court finds defendants' arguments unpersuasive.

■ Sentry argues that the term "unfair competition" as contained within the definition of "advertising injury" in Sentry's General Liability policy and the Umbrella Liability policy does not include price-fixing activity. The defendants argue that the underlying complaint against defendants alleges unfair competitive activities and, accordingly, Sentry has a duty to defend Flom's and Tarnoff against these claims of "unfair competition." This Court notes that "[w]hen there is an ambiguity, insurance policies drafted by the insurer must be construed in favor of the insured to uphold coverage." *Fresard v. Mich. Millers Mutual Ins.*, 97 Mich.App. 584, 590, 296 N.W.2d 112, 114 (1980), *aff'd* 414 Mich. 686, 327 N.W.2d 286 (1982). Because it is not absolutely clear whether the term "unfair competition" includes allegations of price-fixing, this Court declines to grant summary judgment on this issue.

■ Nevertheless, this Court finds that even if the price-fixing activity alleged in the

underlying complaint filed against Flom's and Tarnoff was encompassed within the term "unfair competition," the unfair competition which occurred in the instant case did not "arise out of" the defendants' advertising activities. Accordingly, Sentry has no duty to defend Flom's and Tarnoff against the conduct complained of in the underlying lawsuit, and this Court shall grant summary judgment in favor of Sentry.

The definitions of "advertising injury" relied upon by defendants in their argument that Sentry has a duty to defend are quite similar in both the Comprehensive Liability policy and the Umbrella Liability policy:

> "Advertising injury" means injury *arising out of* an offense committed during the policy period *occurring in the course of your advertising activities,* if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan.

(Plaintiff's Exhibit 1, Broad Form Comprehensive General Liability Endorsement [Form SS 04 09 (Ed. 09 82)]) at 2 (emphasis added), and

> "Advertising injury" means
>
> A. infringement of copyright, title or slogan,
>
> B. libel, slander or defamation of character, or
>
> C. piracy, *unfair competition* or idea misappropriation,
>
> *arising out of the insured's advertising activities* and occurring during the policy period.

(Plaintiff's Exhibit 1, Umbrella Liability Coverage Form [Form SS 06 02 (Ed. 10 80)]) at 2 (emphasis added).

**2.** *See* Second Amended Complaint filed in the *Dry Cleaning* lawsuit, ¶ 21:
> As described below in this Complaint, Defendants have combined and conspired to fix, raise and maintain the prices of dry cleaning and laundry supplies sold to customers in Michigan, in violation of the Antitrust Laws of the United States. As a result of Defendants' illegal actions, the prices paid for such supplies by Plaintiffs and other members of the class Plaintiffs represent have been improperly

■ Defendants are correct when they argue that the duty of the insurer to defend the insured "depends upon the allegations in the complaint of the third party in his or her action against the insured." *Reurink Brothers v. Maryland Casualty Co.,* 131 Mich.App. 139, 143, 345 N.W.2d 659, 661 (1983). Nonetheless, a fair reading of the complaint filed in the *Dry Cleaning* lawsuit leads to the conclusion, for reasons which follow, that Sentry has no duty to defend the defendants against the claims made in that lawsuit.

In *Lazzara Oil Co. v. Columbia Casualty Co.,* 683 F.Supp. 777 (M.D.Fla.1988), *aff'd,* 868 F.2d 1274 (11th Cir.1989), the underlying plaintiffs were service station operators who claimed that the insured, a gasoline distributor, fixed the prices of gasoline and then required the operators to advertise the "fixed" prices by posting those prices at their stations. The court looked to the underlying third-party complaints and held that there was no "advertising injury" because there were no allegations that the insured's advertising activity had caused the underlying plaintiffs' alleged damages. "Since the Court has concluded that the *Barras* complaint has alleged neither personal injury, advertising injury nor property damage, the Court must agree with Defendants that the insurance policies did not obligate them to defend Plaintiffs in the *Barras* suit." *Id.* at 780.

A thorough review of the complaint filed in the *Dry Cleaning* lawsuit shows that the underlying complaint contains no allegations that the injury from defendants' price-fixing activities resulted from any advertising done by defendants; rather, the complaint alleges that the injury suffered by the third-party plaintiffs resulted strictly from the defendants' unlawful price-fixing activities.[2]

In *National Union Fire Insurance Co. v. Siliconix Inc.,* 729 F.Supp. 77 (N.D.Cal.

> and unlawfully elevated above what they would have been in a competitive market. As a result, Plaintiffs and other members of the class Plaintiffs represent have suffered increased costs, reduced sales, lost profits, loss of good will and going concern value, and other injury.

This Court notes that the plaintiffs did not even mention the fact that the defendants may have advertised the unlawfully agreed-upon prices.

1989), the plaintiffs made an argument similar to that made by the defendants in the case at hand. The plaintiffs in that case argued that the advertising for sale of a product which allegedly infringed their patent gave rise to coverage under an "advertising injury" coverage clause. In rejecting this argument, the court stated:

> Siliconix argues that advertising is part and parcel of selling, and therefore the selling of an infringing product is an infringement occurring in the course of advertising. Defendant argues that the injury need not be *caused* by advertising, but must bear some relationship in time, place or circumstance. In other words, there must have been some act of advertising in connection with the infringing invention. It is undisputed that Siliconix did, in fact, advertise the products which form the basis of the underlying patent infringement action.
>
> Although defendant's argument is facially appealing, it contains a fundamental flaw in that it reads the requirement that the infringement occur in the course of advertising out of the policy. Taken to its extreme, this argument would lead to the conclusion that any harmful act, if it were advertised in some way, would fall under the grant of coverage merely because it was advertised.

*Id.* at 80 (emphasis in original).

Likewise, defendants in the instant case have argued that, because they advertised the prices which were reached through unlawful price-fixing activity, this Court should hold that the alleged injury suffered by the plaintiffs in the underlying lawsuit *arose out of* the defendants' advertising activity. As stated previously, a review of the underlying plaintiffs' complaint shows that plaintiffs are claiming that their injury arose out of defendants' price-fixing activity and not the defendants' advertising of the unlawfully agreed-upon prices.

Thus, this Court holds that Sentry did not obligate themselves to defend the defendants against the claims filed in the *Dry Cleaning* lawsuit. Therefore, this Court shall grant plaintiff's motion for summary judgment, deny defendants' motion for partial summary

disposition, and enter the declaratory relief prayed for by Sentry.