**MENDOTA INSURANCE COMPANY,**
Plaintiff,

v.

**Tina Marie HURST, et al., Defendants.**

No. 96–0202–CV–W–5.

United States District Court,
W.D. Missouri,
Western Division.

April 8, 1997.

.. 

Robert L. Wehrman, Miriam Glueck, Linda C. McFee, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for plaintiff.

Andrew J. Gelbach, Warrensburg, MO, for Tina Marie Hurst.

Robert E. Harris, Warrensburg, MO, for Matthew G. Hurst.

John P. Poland, Dale J. Ream, Baker, Sterchi, Cowden & Rice, Kansas City, MO, for Steven E. Jenkins.

## MEMORANDUM AND ORDER

LAUGHREY, District Judge.

Pending before the Court is Plaintiff Mendota Insurance Company's ("Mendota") Motion for Summary Judgment, together with Suggestions in Support, filed on November 4, 1996. Defendant Tina Hurst ("Ms. Hurst") and Defendant Steven Jenkins ("Mr. Jenkins") filed Suggestions in Opposition, to which Mendota filed Reply Suggestions. After due consideration of the above, and for the reasons set forth below, Plaintiff's Motion is granted in part, and the remaining prayers for judgment set forth in Mendota's Complaint are dismissed.

### I. Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prod. Corp. v. First Interstate Commercial Corp.,* 950 F.2d 566, 569 (8th Cir.1991) (citation omitted). If the moving party meets its burden of proof, the burden shifts to the nonmoving party who must set forth specific facts showing that there is a genuine issue for trial to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

With these principles in mind, the Court turns to an examination of the facts.

### II. Factual Background

■ Pursuant to Local Rule 13(G), Mendota's Suggestions in Support begin with separately numbered paragraphs of concise statements of uncontroverted facts. Each fact is supported by reference to a specific part of the record where the fact is established. Rule 13(G) requires Ms. Hurst and Mr. Jenkins to specifically list the facts they contend are in dispute, and to "refer specifically to those portions of the record upon which [he/she] relies." Mr. Jenkins' Opposition complies with the local rule, however, Ms. Hurst's Opposition does not. Although Ms. Hurst denies the vast majority of the uncontroverted facts set forth by Mendota, not one of her denials is supported by record citation, affidavit or otherwise. Accordingly, pursuant to Rule 13(G)(1), for purposes of summary judgment, Ms. Hurst is deemed to have admitted each of Mendota's uncontroverted facts. Such uncontroverted facts, together with any uncontroverted facts set forth in Ms. Hurst's Suggestions in Opposition and/or in Mr. Jenkins' Suggestions in Opposition, form the basis of the Court's understanding of the factual background of this case.

This matter arises out of an automobile accident that occurred on May 22, 1993. The accident involved cars driven by Mr. Jenkins and Ms. Hurst. Mr. Hurst, Gary Hurst, Jr., and Matthew Hurst were passengers in the car driven by Ms. Hurst. Mr. Hurst was killed in the accident and Gary Hurst, Jr., Matthew Hurst and Ms. Hurst each suffered bodily injuries. At the time of the accident, Mr. Jenkins was covered by an automobile insurance policy issued by Plaintiff Mendota. The insurance policy covered bodily injuries up to $25,000 per person and contained a $50,000 per occurrence limitation. [Pl.'s Ex. 1.]

On May 27, 1993, Mr. Andrew Gelbach, counsel for the Hursts, wrote a letter to the adjusting company hired by Mendota to investigate the accident. [Pl.'s Ex. 2.] The letter provided in relevant part, as follows:

> In accordance with Missouri Revised Statute 408.040, this letter is a formal demand for payment of the policy limits of all liability insurance coverages that apply to this case. My willingness to recommend a policy limits settlement with my clients is conditioned upon the above events occurring and this documentation being provided to me *timely*. My willingness to recommend a policy limits settlement is open for 60 days from the date of this letter.

[Pl.'s Ex. 2.] Additionally, the letter sets forth that Mr. Gelbach's willingness to recommend a policy limits settlement was conditioned upon the production of various documents and information, including the following: letters verifying total liability coverage and ownership of the vehicle, certified copies of the insurance policies, copies of Mr. Jenkins' certificate of title, federal and state income tax returns, net worth statements, payroll checks and/or income records, and an affidavit stating how the accident occurred, and where and what alcohol Mr. Jenkins had consumed prior to the accident. [Pl.'s Ex. 2.] Mr. Gelbach's recommendation was further conditioned upon his being able to take the sworn statement of Mr. Jenkins within 60 days. [Pl.'s Ex. 2.]

Mendota received the May 27 letter on or about May 28, 1993, and immediately instructed its insurance adjuster to forward a copy of the letter to Mr. Jenkins' personal attorney, Mr. Michael Fitzgerald.[1] Upon Mendota's receipt of the letter, Mendota undertook to provide the information within its control, including a certified copy of the insurance policy and a verification of the total insurance coverage available. Mendota, through Mr. Fitzgerald, requested that Mr. Jenkins provide the remaining information demanded in the May 27 letter.

On June 8, 1993, Mr. Gelbach sent a letter to the adjuster requesting that Mendota pay Mr. Hurst's medical and funeral expenses and the medical expenses of the Hurst family members. [Pl.'s Ex. 6.] Shortly thereafter, on June 14, 1993, Mendota sent Mr. Gelbach a certified copy of the insurance policy and informed Mr. Gelbach that the requested information relating to Mr. Jenkins and his personal assets would have to be obtained directly from Mr. Fitzgerald. [Pl.'s Ex. 7.][2] The letter further stated as follows:

> We will not be disputing coverage in this matter. I understand that this will be an obvious payment of our policy limits for the death of Gary Hurst, Sr.; however, I am requesting from you a copy of any medical records or documentation you have supporting the injuries suffered by his wife and children.

[Pl.'s Ex. 7.] Mr. Gelbach did not provide Mendota with any documentation as to the bodily injury claims before the expiration of the 60 day period established in Mr. Gelbach's May 27, 1993 letter. Additionally, Mr. Jenkins did not demand that Mendota settle the wrongful death claim or the bodily injury claims within policy limits within the 60 day time period.

On July 27, 1993, a wrongful death suit was filed against Mr. Jenkins in state court for the death of Mr. Hurst. [Pl.'s Ex. 10.] Pursuant to the insurance policy, Mendota

---

1. During the pre-trial conference, counsel indicated that Mr. Fitzgerald was hired by Mr. Jenkins' parents as Mr. Jenkins' personal attorney.

2. Mendota's letter was mailed on June 14, 1993, but was prepared earlier and is dated June 1, 1993. [*See* Pl.'s Ex. 7.]

appointed counsel to represent Mr. Jenkins in the lawsuit. The settlement negotiations between the parties continued, however, no settlement was ever reached. [Pl.'s Exs. 11–16, and 18.] On September 28, 1994, the wrongful death case proceeded to trial and the jury entered a verdict for $850,000 against Mr. Jenkins. Pursuant to Mo.Rev. Stat. § 408.040, the Court awarded $90,-123.35 in prejudgment interest to the Hursts. The Missouri Court of Appeals affirmed the prejudgment interest award, finding that Mr. Jenkins had, in his Answer, judicially admitted that a proper demand for settlement of the wrongful death claim was made. *See Hurst v. Jenkins*, 908 S.W.2d 783, 786 (Mo. App.1995). Mendota paid into the state court its $25,000 policy limits on the wrongful death judgment and paid the accrued prejudgment interest.

In October 1994, Mr. Gelbach and Mr. Fitzgerald both made formal demands that Mendota pay the entire $850,000 judgment in the wrongful death action. [Pl.'s Exs. 20 and 21.] Such demands were based upon allegations of inappropriate conduct and/or bad faith on the part of Mendota. Thereafter, Ms. Hurst, Gary Hurst, Jr., and Matthew Hurst each filed separate lawsuits in state court for the injuries they allegedly sustained in the accident. In each of the suits, the Hursts requested pre-judgment interest pursuant to Mo.Rev.Stat. § 408.040, and in each of his Answers, Mr. Jenkins denied a proper settlement demand was made.[3]

On February 21, 1996, Mendota filed the instant case. By Order dated August 15, 1996, the Court dismissed Mendota's interpleader claim set forth in Count I of its Complaint based upon a lack of subject matter jurisdiction. In Count II, Mendota seeks the following declaration from the Court: (1) that it did not act in bad faith in handling the wrongful death action or the Hursts' bodily injury claims; (2) that Mendota has no obligation to pay any additional sums in connection with the judgment in the wrongful death action; and (3) that Mendota has no obligation to pay any amount in connection with

the bodily injury claims in excess of $25,000. In Count III, Mendota seeks a judgment against all Defendants, declaring the following: (1) that the May 27, 1993, letter written by Mr. Gelbach was not a proper demand for settlement of the Hursts' bodily injury claims pursuant to Mo.Rev.Stat. § 408.040; (2) that Mendota does not owe any prejudgment interest to the Hursts on their bodily injury claims; and (3) that Mendota has no obligation to pay any additional sums on the Hursts' bodily injury claims in excess of the remaining policy limits. Mendota's claims for declaratory relief set forth in Counts II and III of the Complaint are still pending before this Court.

### III. Analysis

#### A. Standards in Declaratory Judgment Actions

■ "It is well established that the Declaratory Judgment Act, 28 U.S.C. § 2201, granted the federal courts discretion 'to make a declaration of rights; it did not impose a duty to do so.'" *Alsager v. District Court of Polk County Iowa, Juv. Div.*, 518 F.2d 1160, 1163–64 (8th Cir.1975) (*quoting Public Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 581–582, 7 L.Ed.2d 604 (1962)). In determining whether or not declaratory relief is proper under a certain set of circumstances, the Court looks to: (1) whether the declaratory judgment will serve a useful purpose in clarifying and settling the legal issues between the parties; and (2) whether a declaratory judgment will afford relief from uncertainty, insecurity and controversy. *Id.* "It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed." *Id.*

In order for the Court to issue a declaratory judgment, "there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" *Ashcroft v. Mattis*, 431 U.S. 171, 172, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977) (*quoting*

---

**3.** On March 3, 1997, judgments were entered in each of the three (3) bodily injury cases, pursuant to Offers of Judgment made by Mr. Jenkins. Pursuant to those judgments, Mendota paid its remaining $25,000 policy limits, on a pro rata basis, into the state court. Additionally, Mendota paid the accrued post-judgment interest on those judgments.

*Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 242, 57 S.Ct. 461, 465, 81 L.Ed. 617 (1937)).

Mendota bears the burden of proof on its claims for declaratory relief set forth in Counts II and III. *Reliance Life Ins. Co. v. Burgess,* 112 F.2d 234, 237–38 (8th Cir.), *cert. denied,* 311 U.S. 699, 61 S.Ct. 137, 85 L.Ed. 453 (1940).

### A. Count II—Declaratory Judgment As To Whether Mendota Acted In Bad Faith

In Count II, Mendota seeks declaratory relief against Mr. Jenkins relating to any alleged bad faith on the part of Mendota in the handling of either the wrongful death or the bodily injury cases. Mendota requests that the Court declare the following: (1) that Mendota did not act in bad faith in handling the wrongful death case or the Hursts' bodily injury claims; (2) that Mendota has no obligation to pay any additional sums in connection with the judgment in the wrongful death case; and (3) that Mendota has no obligation to pay any amount in connection with the bodily injury claims in excess of $25,000. [Compl. at pp. 22–23.]

The Court initially finds that an actual controversy exists as to whether Mendota acted in bad faith in handling the wrongful death action. As set forth above, both Mr. Gelbach and Mr. Fitzgerald demanded in writing that Mendota pay the entire $850,000 judgment in the wrongful death case. [Pl.'s Exs. 20 and 21.] In particular, Mr. Fitzgerald's letter stated as follows:

The purpose of this letter is to demand that Northland/Mendota Insurance Company pay the $850,000 verdict plus interest and costs which have been assessed against Steven E. Jenkins as a result of the Cass County jury trial. Had the insurance company conducted its affairs in this matter in good faith, Steve Jenkins would not now be exposed to this verdict.

[Pl.'s Ex. 21.] Additionally, since the settlement negotiations of the wrongful death claim and the bodily injury claims are rooted in the same May 27, 1993 demand letter, and because the Hursts have claimed an entitlement to pre-judgment interest in their bodily injury cases, there is uncertainty as to whether Mendota has any obligation to pay any additional amounts in connection with the judgments entered in the bodily injury cases. The Court finds that rendering a declaratory judgment on the issue of whether Mendota acted in bad faith in handling the bodily injury cases will clarify and settle the legal issues between the parties.

■ The Court begins its examination of the allegations of bad faith by focusing upon Mendota's Complaint and Mr. Jenkins' Answer. Under Count 11 of its Complaint, Mendota pled the following:

70. [Mendota] acted reasonably and in good faith in responding to the Hursts' counsel's conditional settlement recommendations, in requesting pertinent medical information and records from which to evaluate the bodily injury claims and in tendering payment of the applicable policy limits for the wrongful death claim.

71. [Mendota's] conduct did not proximately cause or result in the entry of judgment against Jenkins in excess of applicable policy limits.

[Compl. at ¶¶ 70–71.] In Mr. Jenkins' Answer, Mr. Jenkins admitted both of these allegations. [Jenkins' Ans. at ¶ 8.] "As a rule, 'admissions in the pleadings ... are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended.'" *Missouri Housing Dev. Com'n v. Brice,* 919 F.2d 1306, 1314 (8th Cir.1990) (quoting *Scott v. Comm'r of Internal Revenue,* 117 F.2d 36, 40 (8th Cir.1941)). Such judicial admissions may even serve as the basis of granting summary judgment against the party making the admission. *Id.* at 1315 (citation omitted).

■ Mr. Jenkins has neither sought to amend nor withdraw his Answer. Accordingly, although such admissions may be inconsistent with any prior allegations made by Mr. Jenkins himself or his counsel, Mr. Jenkins is deemed to have admitted the above facts. Such admissions are consistent with Mr. Jenkins' Opposition to Mendota's Motion for Summary Judgment, wherein Mr. Jenkins stated that "[w]ith respect to the wrongful death claim, this is not a case where

settlement negotiations were unsuccessful due to bad faith on the part of Mendota." [Jenkins' Opp. at p. 5.]

Accordingly, based upon Mr. Jenkins' judicial admissions, Mendota is entitled to summary judgment as to any claim that Mendota acted in bad faith in connection with the May 27, 1993, letter or in tendering the applicable policy limits in the wrongful death case. Mendota is further entitled to summary judgment as to any claim that Mendota's conduct caused or resulted in the verdict in excess of the policy limits in the wrongful death case.

Turning to the issues surrounding the bodily injury cases, in its Motion, Mendota argues that there is simply no evidence of bad faith. The elements of a cause of action against a liability insurer for bad faith refusal to settle a claim are:

(1) the liability insurer has assumed control over negotiation, settlement, and legal proceedings brought against the insured;

(2) the insured has demanded that the insurer settle the claim brought against the insured;

(3) the insurer refuses to settle the claim within the liability limits of the policy; and

(4) in so refusing, the insurer acts in bad faith, rather than negligently.

*State Farm Fire & Cas. Co. v. Metcalf, by Wade,* 861 S.W.2d 751, 756 (Mo.App.1993).

In the instant case, the only evidence before this Court relating to a proposal by the Hursts to settle the bodily injury claims within policy limits is the May 27, 1993, letter. As set forth above, Mr. Jenkins has judicially admitted that Mendota acted in good faith in responding to such letter. All of the other settlement demands contained in the documents submitted to the Court were in excess of applicable policy limits. [Pl.'s Exs. 25 and 30.] Accordingly, there is no evidence before this Court that would satisfy the third element of a bad faith claim. Additionally, with respect to the fourth element, there is no evidence of bad faith on the part of Mendota with respect to the handling of the bodily injury claims.

■ Plaintiff Mendota has met its burden of proof in demonstrating a lack of any evidence to support a claim of bad faith in the handling of the Hursts' bodily injury claims. Mr. Jenkins, in his Opposition, has failed to put forth any evidence showing that there is a genuine issue for trial on this issue. Accordingly, as to Count II, Mendota is entitled to summary judgment on its request for a declaration that Mendota did not act in bad faith in handling the Hursts' bodily injury claims.

■ To the extent Mendota seeks a declaration from this Court that it has no obligation to pay any money in addition to the amounts it has already paid in connection with either the wrongful death case or the bodily injury cases, this Court refuses to enter a declaratory judgment. [*See* Compl. at pp. 22–23, ¶¶ b and c.] The Court has discretion to make a declaration of rights where such declaration will serve a useful purpose in clarifying and settling legal issues, or relieving the parties from uncertainty, insecurity and controversy. *Alsager,* 518 F.2d at 1163–64. Since the allegations of bad faith were specifically pled in Count II, the Court issued a declaration on the issue of bad faith. However, since there are no additional bases for liability, i.e. actual controversies, pled in Count II, the Court is unwilling to utilize its discretion under 28 U.S.C. § 2201 to make a broad sweeping declaration as to a complete lack of any further liability. Accordingly, the prayers for judgment set forth in paragraphs b and c in Count II of the Complaint, are hereby dismissed.

## B. Count III—Declaratory Judgment As To The Issue of Prejudgment Interest

■ In Count III, Mendota requests the Court to declare that the May 27, 1993, letter written by Mr. Gelbach was not a proper demand for settlement of the Hursts' bodily injury claims pursuant to Mo.Rev.Stat. § 408.040. Mendota further seeks a declaration that Mendota has no obligation to pay any additional sums on the Hursts' bodily injury claims.

Section 408.040, provides in relevant part:

In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest, at the rate specified in subsection 1 of this section, shall be calculated from a date sixty days after the demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier.

Mo.Rev.Stat. § 408.040. The purposes of the statute are twofold: (1) the statute "compensates claimants for the true cost of money damages they have incurred due to the delay of litigation;" and (2) "where liability and damages are fairly certain, [the statute] promotes settlement and deters unfair benefit from the delay of litigation." *Brown v. Donham*, 900 S.W.2d 630, 633 (Mo. banc.1995).

Ms. Hurst, Gary Hurst, Jr., and Matthew Hurst each allege that in the May 27, 1993 letter, they made a proper demand for settlement of their bodily injury claims within policy limits, in accordance with § 408.040. [Pl.'s Exs. 22, 28 and 31.] More specifically, the Petitions allege:

> Pursuant to Missouri law and, specifically, Missouri Revised Statute, 408.040, Plaintiff prays for prejudgment and postjudgment interest. Plaintiff made a demand to settle this claim set forth herein for Defendant's policy limits of $25,000 with Northland/Mendota Insurance Company. That offer was left open for 60 days and sent by certified mail, return receipt requested. Defendant [Jenkins] and/or his insurance company, ... failed to settle this case and/or to actually pay the policy limits of $25,000 timely or otherwise. As of this date, no settlement has been reached between these parties and/or Defendant's liability insurance company. Plaintiff prays for prejudgment interest to be determined after the judgment is rendered in this case in accordance with Missouri Revised Statute 408.040.

[Pl.'s Ex. 22 at ¶ 17, 28 at ¶ 18, 31 at ¶ 20.] The Answers filed by Mr. Jenkins in each of the bodily injury cases deny that a proper demand for settlement was made. [Pl.'s Exs. 23, 29 and 32.]

Missouri case law establishes that the "[d]emand required under § 408.040 must be definite in its terms." *Brown*, 900 S.W.2d at 633. The "offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain." *Id.* (citations omitted.) In addition, in order for a demand to be definite in its terms, "the amount due must be 'readily ascertainable.'" *Id.* (*citing Parker v. Nat. Found. Life Ins. Co.*, 805 S.W.2d 195, 197 (Mo.App.1991)). The Missouri Supreme Court has stated, "[w]hile the demand need not always be expressed in dollars and cents, it must nonetheless be capable of ascertainment in a certain dollars and cents amount." *Id.*

The May 27, 1993, letter does not meet the above standard because the amount demanded is not "readily ascertainable."

The letter provides in relevant part:

> In accordance with Missouri Revised Statute 408.040, this letter is a formal demand for payment of the policy limits of all liability insurance coverages that apply to this case. My willingness to recommend a policy limits settlement with my clients is conditioned upon the above events occurring and this documentation being provided to me timely. My willingness to recommend a policy limits settlement is open for 60 days from the date of this letter.

[Pl.'s Ex. 2.]

The Missouri Supreme Court recently addressed the issue of whether a demand for policy limits meets the "readily ascertainable" standard in *Brown*, 900 S.W.2d at 630. In the *Brown* case, the plaintiff, a passenger in a car driven by the defendant, brought suit for injuries she sustained when the defendant fell asleep at the wheel. The plaintiff's attorney wrote a letter making a "formal demand for payment of the policy limits of all insurance coverages that apply to the case." *Id.* at 631. Approximately a week later, the

insurance adjuster wrote a letter to the plaintiff's attorney that stated that the policy limits for bodily injury were $100,000 per person and $200,000 per occurrence. The letter noted that because there were three (3) pending claims for the policy amounts, none of the claims would be evaluated until all three (3) claims were received. *Id.* Thereafter, but still within the sixty (60) day time period from the original demand for payment, the plaintiff's attorney sent a letter to the insurance adjuster, stating the following:

> As I told you by telephone, I am not in a position to discuss this proposal with my client until I receive the insurance policies I have requested. At this point, I believe there is an issue over the medical payment coverage and whether the various insurance policies Miss Donham had with your company will stack under Missouri law. Please get the insurance policies to me immediately.

*Id.* at 634.

The Missouri Supreme Court held that the demand made by the plaintiff's attorney did not meet the "readily ascertainable" standard, for two reasons. First, three persons had made claims against the policy. Accordingly, it was obvious that the $200,000 per occurrence limit would come into play and, therefore, the limits available to the plaintiff were not certain, but rather were an amount between $0 and $100,000. *Id.* Second, the plaintiff's demand for "payment of policy limits of all insurance coverages that apply" was complicated by plaintiff's counsel raising disputed issues as to coverage of medical payments and the stacking of the other policies. *Id.* "Once [plaintiff's] attorney raised the issue of other applicable coverage, there was simply no way to know what amount was demanded for settlement." *Id.* The Court, therefore, held it could not "be determined what [plaintiff] was demanding as 'policy limits of all insurance coverages' or what she would have accepted in settlement of her claim during the sixty-day time limit alleged in her amended petition." *Id.* at 634. Accordingly, the Court reversed the award of prejudgment interest granted to the plaintiff under § 408.040.

The court's analysis and rationale in *Brown* are directly applicable to this case. Similar to the letter in the *Brown* case, the May 27, 1993, letter stated that it was a "formal demand for payment of the policy limits of all liability insurance coverages that apply to this case." [Pl.'s Ex. 2.] The May 27, 1993, letter did not specify the amount of money the Hursts were demanding in settlement of their bodily injury claims, nor did the letter indicate the amount demanded on behalf of each individual claimant. The letter did indicate that it was a demand on behalf of multiple claimants which made it obvious that the $50,000 limit would come into play. Therefore, uncertainty was created as to the amount of the policy limits that would be available to each of the claimants.

Finally, during the pendency of the sixty-day time period, Mr. Gelbach raised issues relating to whether Mendota would cover Mr. Hurst's funeral expenses and medical expenses in addition to the medical expenses of Ms. Hurst, Gary Hurst, Jr., and Matthew Hurst. [Pl's Ex. 6.] It is unclear from Mr. Gelbach's letter whether he was seeking payment in addition to the $25,000 per person bodily injury amount, and/or payment in addition to the $50,000 per occurrence limitation.

Accordingly, since it cannot be determined what amount each of the Hursts was demanding as "all insurance coverages that apply," the amount of the demand was not "readily ascertainable" as required under Mo.Rev.Stat. § 408.040. Hence, as a matter of law, the Hursts cannot establish a proper demand for settlement.

In Ms. Hurst's Opposition, she argues that the issue of whether the Hursts demand was proper was already decided by the Missouri Court of Appeals. However, the Court does not agree. The Missouri Court of Appeals merely held that Mr. Jenkins had admitted that a proper demand had been made under § 408.040 with respect to the wrongful death claim. As the District Court stated in its Order dated August 15, 1996, "the issue of whether there is a proper demand letter in regard to the *bodily injury claims,* has not, however, been addressed." [Order at p. 10.]

For the reasons set forth above, the Court declares that the May 27, 1993, letter was not a proper demand for settlement of the Hursts' bodily injury claims within policy limits pursuant to Mo.Rev.Stat. § 408.040. Accordingly, with respect to the bodily injury claims, no prejudgment interest has accrued under § 408.040 and Mendota and/or Mr. Jenkins are not obligated to pay any prejudgment interest to the Hursts under such statute.

To the extent Mendota seeks a declaration from this Court that it has no obligation to pay any money in addition to the amounts it has already paid in connection with the bodily injury cases, this Court refuses to enter a declaratory judgment. [*See* Compl. at pp. 25–26, ¶ c.] Since there are no additional bases for liability pled in Count III other than the issues already addressed by the Court, the Court is unwilling to utilize its discretion to make a broad sweeping declaration as to a complete lack of any further liability. Accordingly, the prayer for judgment set forth in paragraph c in Count III of the Complaint, is hereby dismissed.

### IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Plaintiff Mendota's Motion for Summary Judgment [Doc. # 30] is GRANTED in part as to Count II and Count III, as set forth above. It is further

ORDERED that the prayers for judgment set forth in paragraphs b and c in Count II of the Complaint, are hereby dismissed. It is further

ORDERED that the prayer for judgment set forth in paragraph c in Count III of the Complaint, is hereby dismissed.