NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3981
_____

THE RESIDENCES AT BAY POINT CONDOMINIUM ASSOCIATION, INC.

v.

THE STANDARD FIRE INSURANCE COMPANY,
d/b/a TRAVELERS INDMNITY AND AFFILIATES;
CHERNOFF DIAMOND & CO, LLC; ALBERT J. DWECK;
THE RESIDENCES AT BAY POINT, LLC

Chernoff Diamond & Co. ("Chernoff"),
                                                                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-13-cv-2380)
District Judge:  Hon. Freda L. Wolfson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 22, 2016

Before:   JORDAN, HARDIMAN, and GREENAWAY, JR., *Circuit Judges*.

(Filed: January 27, 2016)
_____

OPINION*
_____

_____

       * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

This case originated in a flood insurance coverage dispute between an insured, The Residences at Bay Point Condominium Association, Inc. ("Bay Point"), and its insurer, The Standard Fire Insurance Company ("Standard"). Bay Point claims that Standard wrongly withheld full reimbursement for flood damage that four of its buildings sustained when the hurricane called "Superstorm Sandy" struck New Jersey in 2012. Bay Point filed suit in the United States District Court for the District of New Jersey against, among other defendants, Standard and the insurance broker involved in procuring the flood insurance policies, Chernoff Diamond & Co. ("Chernoff"). In two separate orders, the District Court dismissed all of Bay Point's claims against the various defendants. Bay Point did not appeal.

Instead, Chernoff – against whom all claims had just been dismissed – filed this appeal, seeking to reverse the dismissal of the claims against its co-defendant Standard. This odd turn of events followed Bay Point's re-filing of its state-law claims against Chernoff in New Jersey Superior Court. Notably, Bay Point has not re-filed its claims against Standard. By appealing, Chernoff evidently hopes to revive Bay Point's claims against Standard and thus keep Standard in the fight and available as a resource that might mitigate Chernoff's own potential losses in the state-court action. That maneuver, however, is not permissible.

Article III of the Constitution limits the judicial power of federal courts to deciding actual "Cases" or "Controversies." U.S. Const. art. III, § 2. "One essential aspect of this requirement is that any person invoking the power of a federal court must

demonstrate standing to do so." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013).

"The Art. III judicial power exists only to redress or otherwise to protect against injury to

the complaining party, even though the court's judgment may benefit others collaterally."

*Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Because standing is essential to our

jurisdiction, it "is a threshold question in every federal case" and can be neither waived

nor assumed.[1]  *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 537 (3d Cir. 1994) (internal

quotation marks omitted); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231

(1990) ("[S]tanding is perhaps the most important of the jurisdictional doctrines."

(internal quotation marks and brackets omitted)).

Although most cases that involve a question of standing consider whether a

plaintiff satisfies the standing requirement at the time of filing suit, "Article III demands

that an actual controversy persist throughout all stages of litigation."  *Hollingsworth*, 133

S. Ct. at 2661 (internal quotation marks omitted).  In particular, "standing must be met by

persons seeking appellate review, just as it must be met by persons appearing in courts of

first instance."  *Id*. (internal quotation marks omitted).  "The same constitutional minima

for standing to sue are also required for standing to appeal."  *In re Grand Jury*, 111 F.3d

1066, 1071 (3d Cir. 1997).

"Merely because a party appears in the district court proceedings does not mean

that the party automatically has standing to appeal the judgment rendered by that court."

---

[1] As jurisdiction is a threshold determination in this Court, Chernoff's argument that Standard waived its standing argument by not raising it below is inapposite.  It is also fundamentally without logic – Standard challenges Chernoff's standing *to appeal*, something it could not have challenged in District Court, when the appeal did not yet exist.

*Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation*, 32 F.3d 205, 208 (5th Cir. 1994). "The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements." *Diamond v. Charles*, 476 U.S. 54, 62 (1986). Instead, "[i]n order to have standing to appeal a party must be aggrieved by the order of the district court from which it seeks to appeal." *McLaughlin v. Pernsley*, 876 F.2d 308, 313 (3d Cir. 1989). That means "a person must show, first and foremost, 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Even a named defendant does not always have standing to appeal a judgment against it. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 543 (1986) (dismissing a school board member's appeal for lack of standing in the absence of the co-defendant school district because judgment was entered against the board member only in his official capacity, not in his individual capacity).

In addition, a party generally lacks standing to appeal a district court's order to vindicate the rights of another party. *Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976). And "[a]n indirect financial stake in another party's claims is insufficient to create standing on appeal." *Morrison-Knudsen Co. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1214 (9th Cir. 1987); *see also* 15A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3902 (2d ed.); *McLaughlin*, 876 F.2d at 313 (dismissing appeal of third-party defendant for lack of standing where district court's preliminary injunction order did not "directly or indirectly restrain [it] from the performance of any act as a third-party

4

defendant"). Thus, any purpose Chernoff might have in keeping another potential source of funds available to satisfy Bay Point's legal demands is irrelevant. *See Beebe v. Highland Tank & Mfg. Co.*, 373 F.2d 886, 890 (3d Cir. 1967) (dismissing for lack of standing an appeal by one defendant based on the dismissal of a plaintiff's claims against two other defendants); *Penda Corp. v. United States*, 44 F.3d 967 (Fed. Cir. 1994) (concluding that a contractor that had agreed to indemnify the government against liability for the claim in question, despite its potential liability as indemnitor, did not have standing to appeal money judgment against the government).

Admittedly, had Bay Point won its federal claims against Standard, it would have had no need to press its state-court case against Chernoff. It would have already been made whole. But that does not give Chernoff a right to appeal a case it won. Chernoff suffered no direct harm from the dismissal of Bay Point's claims against Standard. Indeed, Chernoff has, to this day, suffered no financial harm of any kind from the District Court's order; the state-court matter is still pending. All the dismissal did was increase the financial risk to Chernoff from a possible judgment. Whether that risk will ever mature remains purely speculative.

Chernoff did not file any cross-claims against Standard and it still retains all of its defenses against Bay Point in state court.[2] We are aware of no case in which we, or any

---

[2] As to its possible defenses in state court, Chernoff argues that the District Court's dismissal of all claims against Standard "deprives Chernoff of the right to obtain an apportionment under the New Jersey Comparative Negligence Act … ." (Reply Br. at 6.) We doubt that assertion. If Chernoff impleads Standard into the state-court action as a third-party defendant – something that it, apparently, has not yet done – it is not clear why Chernoff would be collaterally estopped from litigating Standard's comparative

other court, has concluded that a defendant could, in the absence of any cross-claims, properly appeal the dismissal of claims against another defendant. *Cf. Warth*, 422 U.S. at 499 ("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Accordingly, we are without jurisdiction to decide the merits of Chernoff's appeal.[3]

For the foregoing reasons, we will dismiss this appeal for lack of standing.

---

negligence, as the District Court did not decide the merits of Bay Point's negligence claim against Standard. *See First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 424 (N.J. 2007) (describing requirements for collateral estoppel in New Jersey). Also, Chernoff's inability to seek appellate review would likely foreclose the application of collateral estoppel. *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1010 (N.J. 2006). But even were Chernoff correct, that alleged harm is too tenuous to confer standing. Chernoff's theory of harm goes something like this: *if* Bay Point pursues its state-court claim, and *if* it wins against Chernoff, and *if* Chernoff then brings Standard into the case, and *if* the New Jersey court forecloses a comparative negligence claim, then Chernoff *may* be harmed (assuming Standard was, in fact, negligent).

[3] Standard filed a motion for leave to file a sur-reply brief, alleging that Chernoff raised arguments in its reply brief that it had not made in its opening brief. Because we will dismiss the appeal, we will deny Standard's motion as moot.

As part of Chernoff's response to Standard's motion for leave to file a sur-reply brief, Chernoff appended a letter from counsel for Bay Point describing Bay Point's "support" of Chernoff's appeal and "urg[ing]" us to reverse the dismissal of its claims against Standard. (Response to Motion for Sur-Reply Brief, Exhibit A.) That the party that would have had standing to appeal expresses its agreement with an appellant's position says nothing about whether the actual appellant has standing. *See Diamond*, 476 U.S. at 63 (concluding that the "mere expression of interest is insufficient to bring the [proper party] into the suit as an appellant").