PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 18-2865 & 19-2243

———————

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION;
ADMINISTRATOR, NEW JERSEY SPILL
COMPENSATION FUND

v.

AMERICAN THERMOPLASTICS CORPORATION;
BECKMAN INSTRUMENTS, INC.
a/k/a Beckman Coulter Inc.;
CADILLAC PLASTICS GROUP, INC. f/k/a/ Day
International Corporation
CWM CHEMICAL SERVICES, LLC;
CHESTER HILLS, INC.;
CHRYSLER CORPORATION;
COMPACTION SYSTEMS CORPORATION;
COMPACTION SYSTEMS CORPORATION OF
CONNECTICUT, INC.;
COMPTON PRESS, INC.;
CONNECTICUT RESOURCE
RECOVERY AUTHORITY, INC.;
EAGLE INDUSTRIES, INC.;
EASTERN ENVIRONMENTAL SERVICES, INC.;

EMERSON QUIET KOOL CORPORATION; FALCON
MANUFACTURING, INC.;
JOHN C. FILIBERTO, in his individual capacity;
JOSEPH B. FILIBERTO, in his individual capacity;
J. FILIBERTO SANITATION, INC.;
FLAIR CLEANERS OF MORRISTOWN, INC.;
GARBCO ASSOCIATES, INC.; JAMES P HORAN, INC.;
HOWMET CORPORATION
a/k/a Howmet Turbine Components Corporation;
RAYONIER, INC. f/k/a ITT Rayonier, Inc.;
KEUFFEL & ESSER COMPANY;
MARS, INC.; THE MENNEN COMPANY;
OCCIDENTAL PETROLEUM CORPORATION;
PHILLIPS PETROLEUM COMPANY, INC.;
POLICASTRO SERVICE, INC.;
PUBLIC SERVICE ELECTRIC & GAS COMPANY;
WARNER LAMBERT COMPANY, INC.;
WASTE MANAGEMENT OF NEW JERSEY, INC.,
f/k/a/ Waste Management of North Jersey, Inc.

COMPACTION SYSTEMS CORPORATION OF
CONNECTICUT, INC.;
COMPACTION SYSTESM CORPORATION
(a New Jersey Corporation),
                              Third Party Plaintiffs


                    v.


CARTER DAY INDUSTRIES, INC.;
COMBUSTION EQUIPMENT ASSOCIATES, INC.;
COMBE FILL CORPORATION,
                              Third Party Defendants


2

(D.C. No. 2-98-cv-04781)

UNITED STATES OF AMERICA

v.

BECKMAN COULTER, INC. f/k/a BECKMAN
INSTRUMENTS, INC.;
CADILLAC PLASTICS GROUP, INC.
f/k/a/ Day International Corporation f/k/a Dayco Corporation;
CWM CHEMICAL SERVICES, LLC;
f/k/a/ Chem-Trol Pollution Services Inc.
as successor R&R Sanitation, Inc.
CHESTER HILLS, INC.; CHRYSLER CORPORATION;
COMPACTION SYSTEMS CORPORATION;
COMPACTION SYSTEMS CORPORATION OF
CONNECTICUT, INC.
COMPACTION SYSTEMS CORPORATION
OF NEW JERSEY INC.;
CONNECTICUT RESOURCE
RECOVERY AUTHORITY, INC.;
EAGLE INDUSTRICAL PRODUCTS, INC.,
as successor to Falcon Manufacturing, Inc.;
EAGLE INDUSTRIES, INC.;
EASTERN ENVIRONMENTAL SERVICES, INC.;
as successor to West Milford Haulage, Inc. and
Frank Fenimore, Inc.;
FALCON MANUFACTURING, INC.;
JOHN C. FILIBERTO, in his individual capacity;
JOSEPH B. FILIBERTO, in his individual capacity;
GARBCO ASSOCIATES, INC.
f/k/a Filiberto Sanitation, Inc.;
HOWMET CORPORATION

3

a/k/a Howmet Turbine Components Corporation;
MARS, INC.; THE MENNEN COMPANY;
OCCIDENTAL PETROLEUM CORPORATION;
PHILLIPS PETROLEUM INC.; RAYONIER, INC.;
WARNER-LAMBERT COMPANY INC.;
WASTE MANAGEMENT OF NEW JERSEY, INC.,
as successor to J. Filiberto Sanitation, Inc.

(D.C. No. 2-98-cv-04812)

Compaction Systems Corporation
of Connecticut, Inc.;
Compaction Systems Corporation
(a New Jersey Corp.),
        Appellants in No. 18-2865

United States of America,
        Appellant in No. 19-2243

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action Nos. 2-98-cv-04781/2-98-cv-04812)
District Judge: Honorable William H. Walls

_____

Argued June 1, 2020

Before: AMBRO, HARDIMAN,
and RESTREPO, Circuit Judges

4

(Opinion filed: September 8, 2020)

Jeffrey M. Pollock (Argued)
Fox Rothschild
997 Lenox Drive
Princeton Pike Corporate Center, Building 3
Lawrenceville, NJ  08648

Robert J. Rohrberger
Fox Rothschild
49 Market Street
Morristown, NJ  07960

Jonathan D. Brightbill
Eric Grant
   Deputy Assistant Attorneys
Brian Toth
Andrea Berlowe (Argued)
Sarah Flanagan
James Bove
United States Department of Justice
Environmental & Natural Resources Division
P.O. Box 7415
Washington, DC  20044

        Counsel for Appellants

Charles J. Dennen
Debra S. Rosen (Argued)
Maureen T. Coghlan
Anthony M. Fassano

Archer & Greiner
One Centennial Square
33 East Euclid Avenue
Haddonfield, NJ 08033

Counsel for Appellees

_____

OPINION OF THE COURT

_____

AMBRO, Circuit Judge

The Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, promotes the timely cleanup of hazardous sites by providing that Federal and State Governments cooperate with one another to remediate the sites and later recover costs from the parties responsible for polluting them. Although the procedural history of this case is quite long, the parties present a single legal question: Whether a polluting party's settlement with the State of New Jersey protects it from lawsuits seeking contributions toward expenditures made by the Federal Government on the same site? Our answer here is no.

## I. BACKGROUND

### A. Statutory Background

CERCLA "promote[s] the timely cleanup of hazardous waste sites and [] ensure[s] that the costs of such cleanup efforts [are] borne by those responsible for the contamination." *CTS Corp. v. Waldburger*, 573 U.S. 1, 4 (2014) (internal quotation marks and citation omitted). The statute gives the President, acting through the Attorney General or the United

6

States Environmental Protection Agency ("USEPA[1]"), the power to identify and remediate contaminated sites. *See* 42 U.S.C. § 9604. To foster rapid cleanup, Congress adopted a policy of delaying litigation about costs until after a remediation plan is in place. "Thus, under CERCLA, [responsible parties'] liability is not assessed until after the [US]EPA has investigated a site, decided what remedial measures are necessary, and determined which [parties] will bear the costs." *In re Combustion Equip. Assocs.*, 838 F.2d 35, 37 (2d Cir. 1988).

"[S]tates play a critical role in effect[]ing the purposes of CERCLA." *Niagara Mohawk Power Corp. v. Chevron U.S.A.*, 596 F.3d 112, 126 (2d Cir. 2010). Section 104(d) authorizes the USEPA to "enter into contract[s] or cooperative agreement[s] with [a] State or political subdivision" to carry out response activities at the hazardous site. 42 U.S.C. § 9604(d)(1)(A). Under these agreements, the State pays all operation and maintenance expenses, subject to reimbursement from the Federal Government of up to 90% of the State's expenditures. *Id*. § 9604(c)(3), (c)(5)(D). Both the State and the Federal Governments may recover their clean-up costs directly from Potentially Responsible Parties ("PRPs") under CERCLA Section 107(a). *Id.* § 9607(a)(4)(A). In fact, "[u]nder CERCLA, [S]tates have causes of action independent from the [F]ederal [G]overnment[,]" *Niagara Mohawk Power Corp.*, 596 F.3d at 126 (citing 42 U.S.C. § 9607(a)(4)(A)), allowing them to act "as independent entities" without the express authorization of the USEPA, *id*. at 127. Section 107(a)(4)(B) makes a PRP strictly liable for "any other necessary costs of response incurred by any other person," so that the State and Federal Governments can recover fully from

---

[1] This term, "Federal Government" and "United States" are used interchangeably throughout our opinion.

7

a single PRP regardless of its share of the liability. *Id.* § 9607(a)(4)(B).

To enable PRPs to redistribute these costs, Congress amended CERLCA in 1986 to include Section 113, which provides that PRPs can seek contribution for an equitable share of response costs from other liable parties. *See United States v. Atl. Research Corp.,* 551 U.S. 128, 132 (2007) (citing Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, § 113, 100 Stat. 1613, 1647–52 (codified at 42 U.S.C. § 9613)). In addition, to aid the recovery of clean-up costs, Section 113(f)(2) gives PRPs that settle with the Federal or State Government protection from other PRPs' contribution claims as long as those claims and the settlement address the same "matters." 42 U.S.C. § 9613(f)(2).

This is the key provision at issue in our case. Specifically, it provides that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." *Id.* This contribution protection leaves "PRPs who do not join in a first-round settlement . . . with the risk of bearing a disproportionate share of liability[,] . . . a technique which promotes early settlements and deters litigation for litigation's sake . . . ." *United States v. Charter Int'l Oil Co.*, 83 F.3d 510, 515 (1st Cir. 1996) (internal citation and quotation marks omitted).

## B. Factual and Procedural Background

### 1. The Combe Superfund Site

From 1948 until 1981, the Combe Fill South Landfill Superfund Site (the "Site"), a 65-acre parcel located in Chester and Washington Townships, New Jersey, functioned as a

municipal landfill, converting waste into the hazardous substance "ECO-Fuel II." In 1978, Carter Day Industries, Inc. ("Carter Day"), then known as Combustion Equipment Associates, Inc., purchased and ran the Site through its subsidiary, the Combe Fill Corporation ("Combe Fill"), until it closed. During this period, Combe Fill hired Compaction Systems Corporation of Connecticut, Inc. and Compaction Systems Corporation (collectively, "Compaction") to conduct operations at and transport hazardous materials to the Site. This appeal pits appellants Compaction and the Federal Government against appellee Carter Day.

In 1983, the USEPA added the Site to the National Priorities List for long-term remedial evaluation and response. As part of the cleanup effort, the USEPA and the New Jersey Department of Environmental Protection (the "NJDEP") entered into a cooperative agreement (the "Cooperative Agreement") that continues today and designates the NJDEP as the lead agency to oversee the Site's cleanup. Under this pact, the USEPA "contribute[d] one hundred percent (100%) of the cost of managing and performing" the remedial investigation and feasibility study and "ninety percent (90%) of the cost of managing and performing the work specified in [the remedial action]," with the NJDEP paying the other 10%. S.A. 34. An amendment clarified that "[n]othing contained in this Cooperative Agreement shall be construed to create . . . the relationship of agency between [US]EPA and the State[,]" and expressly "negated and denied" the authority of either party to "attempt to negotiate on behalf of the other." S.A. 39–40.

Over the decades, the USEPA incurred over $104 million in costs at the Site, while the NJDEP separately spent $24 million.

2. Combe Fill's and Carter Day's Bankruptcy Proceedings

9

In 1981, just as the Site was closing, Combe Fill filed for Chapter 7 protection in the Bankruptcy Court for the Southern District of New York. Both the United States and the State of New Jersey filed claims in that case, which were settled separately for $50,000 each. Combe Fill, its bankruptcy, and its settled claims are not directly at issue here.

A year earlier, Carter Day filed in the same venue a separate petition for Chapter 11 protection. The Bankruptcy Court disallowed New Jersey's claim there because only Combe Fill was liable for the costs of cleaning up the Site under New Jersey law. The United States did not file a claim against Carter Day in its bankruptcy case.

In 1983, the USEPA notified Carter Day and roughly 190 other entities that they were PRPs for the Site's cleanup costs. Carter Day sought a declaratory judgment in the District Court for the Southern District of New York that it had discharged its CERCLA liability in its bankruptcy reorganization. The District Court dismissed the case as unripe. And on appeal the Second Circuit declined to exercise its discretionary jurisdiction under the Declaratory Judgment Act because, *inter alia*, the USEPA investigation of the Site was at a preliminary stage and deciding the claim prematurely would interfere with "Congress's policy of expediting cleanup." *In re Combustion Equip. Assocs.*, 838 F.2d at 40. Accordingly, neither the NJDEP nor the USEPA's claim against Carter Day was fully resolved at that time.

3. The NJDEP Settlement with Carter Day

In 1990, Carter Day filed another adversary proceeding in the SDNY Bankruptcy Court seeking a determination that the NJDEP claim had been discharged in bankruptcy. It did not name the USEPA as a defendant. The following year the Bankruptcy Court approved a settlement between Carter Day

10

and the NJDEP that discharged "all claim[s] of [the] NJDEP against Carter Day with respect to the [Site]" (the "NJDEP Settlement"). J.A. 1339. The parties agreed that "the prior disallowance of the NJDEP's proof of claim in [Carter Day]'s Chapter 11 case had *res judicata* effect and barred the NJDEP's claims." *Id.* The NJDEP did not receive any additional money under the Settlement, nor was the USEPA party to it.

### 4. The USEPA's and the NJDEP's Action against 24 PRPs

In 1998, the United States sued 24 PRPs—including Combe Fill's contractor, Compaction—in the District Court for the District of New Jersey to recoup costs it incurred remediating the Site. The NJDEP filed a similar lawsuit against many of the same defendants, and the two cases were consolidated before the District Court.

The United States and the NJDEP entered into a global consent decree with the majority of the parties (including Compaction) in 2009 for $62.6 million, with the United States receiving 81.5% of the funds and the NJDEP receiving the remainder (the "Consent Decree"). Compaction contributed $11 million, including over $6.8 million plus interest to the USEPA, over $1.5 million plus interest to the NJDEP, and over $433,000 for natural resources damages payable to the NJDEP as one of the natural resources trustees. In addition, Compaction agreed to pay $900,000 per year in ongoing operation and maintenance expenses at the Site for a 30-year period. Finally, it consented to a judgment of $26 million (the "Consent Judgment"), but is not obligated to pay any amount of the Consent Judgment unless its recoveries from CERCLA contribution actions against other PRPs exceeded at least $11 million plus certain attorneys' fees. Carter Day was not a party to either the Consent Decree or the Consent Judgment.

11

5. Compaction's Contribution Action Against Carter Day

Compaction filed an amended third-party complaint seeking contribution from Carter Day in 2011. The latter moved for summary judgment, and the District Court granted its motion without oral argument, reasoning that the NJDEP Settlement protected it from contribution. The Court relied on our decision in *Trinity Industries, Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131 (3d Cir. 2013). That case interpreted the language "[a] person who has resolved its liability to the United States or a State" in a different CERCLA provision, Section 113(f)(3)(B), to govern the rights of PRPs that resolve their liability with either the Federal or State Government rather than requiring resolution with both to apply. Extending that reasoning to Compaction's claim, the Court ruled that Carter Day's settlement with the NJDEP barred Compaction from seeking contribution for its federal liability from Carter Day.

Compaction moved for reconsideration, and the United States submitted a brief in support of that motion. They argued that the Court failed to consider the effect of its holding given CERCLA's allocation of responsibility between the Federal Government and the States, as well as the narrow scope of the "matters addressed" in the NJDEP Settlement.

After determining that the parties did not satisfy the standards for reconsideration, the District Court denied the motion. Compaction and the United States appeal to us in separate actions, consolidated here.

12

## II. JURISDICTION & STANDARD OF REVIEW

The District Court had jurisdiction under 42 U.S.C. § 9613(b) and 28 U.S.C. § 1331. We have jurisdiction to review the District Court's decision under 28 U.S.C. § 1291.

We review anew a district court's grant of a party's motion for summary judgment. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). We will affirm if, drawing all inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

### A. The Federal Government's Article III Standing to Appeal

Compaction no doubt may appeal. Carter Day challenges, however, whether, under Article III of the United States Constitution, the United States has standing to appeal the District Court's grant of Compaction's motion for summary judgment and denial of the latter's motion to reconsider, to which the United States filed a brief in support.[2]

---

[2] The United States is a party to the consolidated case in front of the District Court, but it never filed a formal motion to intervene in Compaction's third-party claim against Carter Day. In portions of two footnotes in Carter Day's appellate brief it appears to argue the United States lacked statutory standing to appeal because it had not intervened in this specific matter. *See* Carter Day Br. 1 n.1, 3 n.3. As this argument was

13

Carter Day contends the Government's potential recovery under the $26 million Consent Judgment derives from Compaction's contribution actions and is contingent on Compaction recovering at least $11 million in contribution from other PRPs. It argues that such a contingent financial interest does not confer standing.[3]

---

vaguely presented without factual or legal support, it is forfeited for lack of development. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) (arguments made in passing, "such as, in a footnote," are forfeited); *see also IPSCO Steel (Alabama) v. Blaine Const. Corp.*, 371 F.3d 150, 154 (3d Cir. 2004) (explaining that statutory standing to appeal is non-jurisdictional). Moreover, we have not directly held that in these circumstances the Federal Government needed to intervene. *See Bank of Am. Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 341 n.2 (3d Cir. 1986); *Devlin v. Scardelletti*, 536 U.S. 1, 6–7 (2002) (holding that unnamed class members who file a timely objection do not need to intervene to appeal); *but cf. Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (determining that a group testifying before the district court, but did not intervene, cannot appeal).

[3] At oral argument, Carter Day also argued that even if Compaction's appeal is successful, it is impossible for Compaction to recover at least $11 million from Carter Day in order to permit the Government to recover any portion of the $26 million Consent Judgment because, at a minimum, the NJDEP Settlement barred Compaction from recovering on the $1.5 million plus it paid the NJDEP. Thus Compaction's contribution claim against Carter Day is limited to the roughly

14

To establish standing, a party must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

Carter Day asserts the Federal Government has not established an injury in fact, "the [f]irst and foremost of standing's three elements," *id.* (internal quotation marks and citation omitted). To establish this prong, "a [litigant] must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete [real, not abstract] and particularized' [personal,] and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). This is to say the United States must "possess a 'direct stake in the outcome' of the case." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)). "A purely speculative concern about the eventual result of a co-party's case is likewise insufficient." *Morrison-Knudson Co. v. CHG Int'l, Inc.*, 811 F.2d 1209, 1214 (9th Cir. 1987) (citation omitted).[4]

---

$9.5 million it (Compaction) paid the USEPA. Compaction counters that it is also entitled to recover the full $26 million Consent Judgment from Carter Day and that it is seeking to recover additional sums from other PRPs, which could be added to moneys recovered from Carter Day. As explained in below, we need not resolve these issues because the United States clearly has a financial interest in Compaction's contribution actions.

[4] Carter Day analogizes this case to our decision in *Residences at Bay Point Condo. Ass'n v. Standard Fire*

15

The Supreme Court's decision in *Village of Arlington Heights v. Metropolitan Housing Development Corp.* is instructive. There the Court held that Metropolitan, a developer with a contract to build multi-family housing, had shown an injury to itself even though it had yet to suffer any direct economic harm from the Village's re-zoning decision (its contract to develop the property contained an out if it did not receive zoning clearance). *See* 429 U.S. 252, 261 (1977). The Court reasoned that, because the zoning was an absolute bar to the development of property and Metropolitan's development plans were detailed and specific, it did not have

---

*Insurance Co.*, 641 F. App'x 181 (3d Cir. 2016). We are not bound by non-precedential decisions, I.O.P. 5.7, but we take Carter Day's point to be that a defendant lacks standing to appeal a court's dismissal of a co-defendant's claim. While in some circumstances such an appeal may present an injury too speculative to confer standing, *see, e.g.*, *Morrison-Knudson*, 811 F.2d at 1209, it is possible to assert an interest in another party's case that is sufficiently real to establish an injury in fact. For example, in *International Multifoods Corp. v. Commercial Union Insurance Co.*, the Second Circuit held that Commercial Union had standing to challenge the district court's grant of its co-defendant's motion for summary judgment. *See* 309 F.3d 76, 89–90 (2d Cir. 2002). Even though the district court's order did not directly involve Commercial Union, it had "a significant financial stake in whether [its co-defendant] c[ould] be forced to cover any of Multifoods' loss" because under New York law it (Commercial Union) had the equitable right to collect contributions from other insurers. *Id.* at 89. Similarly, here the Consent Judgment directly linked the Federal Government's financial interest with the outcome of Compaction's contribution claim against Carter Day.

16

to engage in "undue speculation as a predicate for finding that [Metropolitan] has the requisite personal stake in the controversy." *Id*. at 261–62.

Similarly, here the District Court's ruling stands as a barrier to the United States recovering on its $26 million Consent Judgment against Compaction. If we grant the relief the United States seeks, the barrier will be largely removed. Thus the Federal Government has stated a traceable and redressable claim. Though it is not certain that Compaction will ultimately collect from other PRPs at least $11 million in contribution actions, the court-approved Consent Decree binding it and the Federal Government ensures that the latter's interest in this matter is not abstract. The $26 million Consent Judgment also makes the United States' interest in this appeal individualized rather than a general grievance or a mere matter of policy.

We thus proceed to the merits of its appeal alongside that of Compaction.

## B. CERCLA Section 113(f)(2) and Compaction's Contribution Claim

As discussed above, the District Court found that Carter Day's settlement with the NJDEP pertained to the entire Site; hence it precluded contribution suits against Carter Day by other PRPs under Section 113(f)(2) of CERCLA regardless whether they sought recovery for Federal or State liability. To repeat, that provision provides that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). Compaction acknowledges that Carter Day's settlement with the NJDEP precludes Compaction from seeking contributions for its

17

liability to that State agency, roughly $1.5 million plus interest. Instead, Compaction's sole contention is that the "matters addressed" in the NJDEP Settlement with Carter Day do not include claims by the USEPA, and thus Compaction can seek contribution for that portion of its payments under the Consent Decree. Accordingly, we must determine the scope of the "matters addressed" in the NJDEP Settlement and whether it covers Carter Day's liability to the Federal Government.

### 1. The Scope of the "Matters Addressed"

But for the general instruction to "us[e] such equitable factors as the court determines are appropriate" in resolving contribution claims, 42 U.S.C. § 9613(f)(1), CERCLA does not specify how to determine what matters are addressed by a consent decree. Moreover, the NJDEP Settlement does not include an explicit "matters addressed" section.[5] "In the absence of explicit language, . . . one must . . . look elsewhere to determine 'matters addressed.'" *Charter Int'l Oil Co*., 83 F.3d at 517. "[C]ourts have suggested that the 'matters addressed' by a consent decree be determined with reference to the particular location, time frame, hazardous substances, and clean-up costs covered by the agreement." *Akzo Coatings, Inc., v. Aigner Corp*., 30 F.3d 761, 766 (7th Cir. 1994) (collecting cases). This list is non-exhaustive, leaving a consent decree's scope "[to] be assessed in a manner consistent

---

[5] In 1997, the USEPA and Justice Department published guidance recommending that settlement agreements include an explicit definition of "matters addressed" "that clarifies the parties' intent regarding the scope of contribution protection." U.S. Dep't of Justice & U.S. Envtl Prot. Agency, Defining "Matters Addressed" in CERCLA Settlements (Mar. 14, 1997), https://www.epa.gov/sites/production/files/2013-09/documents/defin-cersett-mem.pdf.

with both the reasonable expectations of the signatories and the equitable apportionment of costs that Congress has envisioned." *Id.* (citation omitted).

We have previously explained that "[i]n light of Congress's intent to induce settlements, all settlement[s] should be presumed to afford to the settlors protection against claims for contribution regarding an entire site, unless there is an explicit provision to the contrary." *United States v. Se. Pa. Transp. Auth.*, 235 F.3d 817, 823 (3d Cir. 2000) (quoting John M. Hyson, *CERCLA Settlements, Contribution Protection and Fairness to Non–Settling Responsible Parties*, 10 Vill. Envtl. L.J. 277, 320 (1999)).

But this does not tell us which sovereigns are covered by a settlement. That inquiry raises additional concerns outside of inducing settlements. For example, in *Akzo Coatings*, the Seventh Circuit addressed whether Section 113(f)(2) protected Aigner, a PRP that had settled with state and federal agencies, from contribution actions for remedial costs borne by Akzo, another PRP, outside of the governmental spending. 30 F.3d at 764–70. In those circumstances, it reasoned, reading the matters addressed in the settlement broadly "would defeat the policy of CERCLA[,]" as neither the Federal Government nor the party settling its claims had proper incentive to protect another PRP's contribution rights. *Id.* at 769 (citation omitted). Thus "it [is] prudent to require the settling parties to be more explicit when they intend to bar contribution for work" performed outside of those parties' efforts. *Id*. at 768.

Applying *Akzo*'s logic here, we interpret the matters addressed in an agreement narrowly when determining whether settlement with one sovereign covers the claims of another. Carter Day entered the NJDEP Settlement to cover all claims "with respect to the [Site]" and those "arising out of or

19

related to the [Site]." J.A. 1339. Although this language is broad, the Settlement, by its own terms, concerns only liability to the NJDEP. *Id.* ("Carter Day was discharged . . . from all liabilities to NJDEP[.]"). Thus, despite its broad language referring to all remedial costs connected to the Site, the agreement's specific language regarding the NJDEP ties only to the State's expenditures.

In addition, looking to the reasonable expectations of the parties, it is sensible to limit the protection under the NJDEP Settlement to New Jersey's claims. As Compaction explains, the NJDEP Settlement "merely reflects a decision by NJDEP to acquiesce to [Carter Day's] position that [the NJDEP] was barred from proceeding with any claims" as a result of Carter Day's bankruptcy case, in which the USEPA took no part. Compaction Br. 29–30. It would have been unreasonable for either the NJDEP or Carter Day to expect that the NJDEP Settlement addressed any liability stemming from the USEPA's clean-up costs.[6]

---

[6] Carter Day argues that the United States' decision not to pursue a claim against it over the past 30 years "indicates that it too regarded any claims against [Carter Day] as resolved." Carter Day Br. 30. As the Federal Government was not a party to the NJDEP Settlement, its decisions have no bearing on the parties' reasonable expectations. Further, just because the United States had an opportunity to intervene in the litigation between the NJDEP and Carter Day, *see* 42 U.S.C. § 9622(i) (requiring a public notice and comment period before final settlement), and chose not to, does not mean that its claim was resolved. That does not affect how we interpret the matters addressed in the NJDEP Settlement or those parties' expectations. If anything, that the United States

20

Further, allowing Carter Day to avoid liability for any federal expenditures would not equitably apportion the remedial costs.  The USEPA bore the lion's share of the Site's cleanup costs.  It was responsible for the remediation and investigation costs, and though the State pays all operation and maintenance expenses, the Federal Government reimburses 90% of those costs as well.  42 U.S.C. § 9604(c)(3), (c)(5)(D).  Affirming the District Court would allow a party to avoid massive liability by settling with an agency responsible for 10% of the total sticker price.

## 2.  CERCLA's Purpose and Procedures

"[T]he two major policy [goals] underlying CERCLA are ensuring that prompt and effective clean-ups are put into place and making sure that the PRPs responsible for the hazards created bear their approximate share of the responsibility." *Charter Int'l Oil Co.*, 83 F.3d at 522.  In other words, be quick and share the costs.  To implement these goals, CERCLA "also aims to induce those parties who settle earlier to do so for higher amounts than they might otherwise by assuring them the right to seek contribution protection from those who have not as yet settled."  *Id.* (citation omitted).

Carter Day argues that construing narrowly the scope of its settlement protection affronts CERCLA's goal of incentivizing early settlement.  While we acknowledge that our decision here could affect a PRP's incentive to settle, ultimately it vindicates CERCLA's goal of equitably distributing liability without extinguishing incentives to settle.

was not named in, and opted to stay out of, Carter Day's bankruptcy adds support to the argument that it and the parties understood the matters addressed in the NJDEP Settlement to relate only to the NJDEP's portion of the remedial expenditures.

As we indicated above, a settling-PRP is protected only insofar as a consent decree and a contribution action address the same matters. In effect, our decision encourages a PRP to settle with both the relevant State and Federal Governments.

Further, construing the NJDEP Settlement to apply only to NJDEP's claims avoids creating perverse incentives for a PRP to resolve those claims only in the hope of barring other PRPs from seeking contribution on federal claims. As noted above, that outcome would be a boon to industry, as the statutory scheme allocates the vast majority of the clean-up costs to the Federal Government.

Carter Day argues that we should not be worried about these distortions because the District Court did not say that NJDEP resolved the United States' claims against it; thus the USEPA could still seek to recover costs directly from it under CERCLA Section 107(a). 42 U.S.C. § 9607 (providing a government can recover from PRPs cleanup costs it incurred). While that is true, it also runs afoul of the statute's procedures. The statutory scheme incentivizes the State and Federal Governments to recover fully from a single PRP, after which that PRP can litigate the proper allocation of liability among other PRPs. This reduces litigation directly involving the States and the Federal Government. If we were to affirm the District Court, taxpayer-funded litigation by the Federal Government would undoubtedly increase.

Finally, our decision aligns with CERCLA Section 104, which outlines how the Federal Government is to work with the States to coordinate remedial actions and makes clear that costs borne by the United States and New Jersey are distinct. 42 U.S.C. § 9604(c). The USEPA-NJDEP Cooperative Agreement for the Site reiterates the statutory allocation of costs and states that the NJDEP cannot recover funds on behalf of the USEPA, and vice versa. It defies reason and the plain

22

language of the Cooperative Agreement that the matters addressed in the NJDEP Settlement with Carter Day could include expenditures incurred—per statute and contract—solely by the United States.

In addition, the breakdown of payments among PRPs in the Consent Decree illustrates the separate nature of each sovereign's costs. Approximately $1.5 million of Compaction's $11 million settlement related, and was paid, to the NJDEP. Thus, despite Carter Day's contention that requiring courts to distinguish between State and Federal clean-up costs at a site "would put an almost impossible burden on a district court to parse out what 'type' of claim was made[,]" Carter Day Br. 35, we have no difficulty distinguishing between State and Federal liability here.

\* \* \* \* \*

Our interpretation of the scope for the "matters addressed," as well as CERCLA's purpose and procedures, tell us the NJDEP Settlement cannot protect Carter Day from contribution actions by other PRPs related to federal liability. The scope of the NJDEP Settlement resolves "all liabilities [of Carter Day] to [the] NJDEP." J.A. 1339. We do not believe it discharged liabilities to the USEPA. Accordingly, we reverse the District Court's summary judgment order and its denial of Compaction's motion to reconsider, and remand the case for further proceedings.

23